BUFORD v. SOUTHWESTERN LIFE
INS. CO. et al.
No. 11491.

Court of Civil Appeals of Texas. Dallas.
Nov. 3, 1934.

Rehearing Denied Dec. 8, 1934.

Thompson, Knight, Baker & Harris, Pinkney Grissom, and W. J. Rutledge, Jr., all of Dallas, for appellant.

McBride, Hamilton, Lipscomb & Wood, O. F. Wencker, and Mike T. Lively, all of Dallas, for appellees.

BOND, Justice.

On October 16, 1915, the Southwestern Life Insurance Company issued a policy of life insurance in the sum of $4,000 on the life of Jesse Elmer Buford, payable to his wife, Addie C. Buford, subject to the right of the insured at any time to change the beneficiary, and it stipulated, among other provisions, for the payment to the insured the cash surrender value of the policy on its delivery and cancellation. At the time of the institution of this suit, the amount of the cash surrender value of the policy, less an existing indebtedness due to the company, was the sum of $649.47.

The insured, under the terms of the policy, notified the company of his desire to surrender and cancel the contract, and accept the cash surrender value in full settlement of the obligation, as did also the beneficiary, and asserted an insurable interest in the life of the insured, an assignable interest in the policy, and held the policy as security for an indebtedness against the insured. The adverse contentions of the insured and the beneficiary over the policy and the rights flowing from it culminated in the insurance company filing suit in a district court of Dallas county in the nature of a bill of interpleader, alleging that the sum of $649.47 is the amount due as the cash surrender value of the policy after deducting the company's prior claim for money loaned thereon; that it was ready, able, and willing to pay the amount due, extend, according to the terms of the policy, the rights, privileges, and obligations to the one legally entitled thereto, but, on account of the contending claims of the insured and the beneficiary, it was unable to determine without hazard to itself the respective claims of the parties to the policy and the cash due thereunder. So, to avoid the danger of having to pay twice, the insurance company tendered into court the cash, and asked that the two adverse claimants be required to interplead and set up their respective claims to the end that the court determine which of the claimants is entitled to the fund, or how the same should be divided between them, and to cancel the policy of insurance.

The defendants filed answer:

Addie C. Buford, appellant, entered a general demurrer, general denial, and specially alleged that she has an insurance interest in the life of the insured, in that, she is his wife, the designated beneficiary in the policy of insurance, and a creditor of the insured in a sum in excess of $7,000; that, since April 27, 1923, she has paid the premiums to maintain the policy in full force, far in excess of the amount of cash tendered by plaintiff into court, for which she has an equitable lien on the policy and all values accruing thereunder; that the insured did assign and transfer by delivery to her the policy of insurance as security for the indebtedness, and she, in turn, delivered it to the plaintiff, subject only to the right of the plaintiff to collect the amount due to it for an extended loan; and that her rights in the policy are superior to any rights of the insured. She sought to recover her debt against the cross-defendant, Jesse Elmer Buford, to establish her rights to the insurance policy, and to the benefits due and payable thereunder, including the cash tendered into court.

The cross-defendant, Jesse Elmer Buford, by pleadings and evidence, joined issue only with the defendant Addie C. Buford, entered a general denial to her petition, and specially alleged that he is not indebted to her in any amount; that he made no assignment, transfer, or delivery of the policy to her; that on account of recited statement of facts, disclosing legal cruelty, and signifying acts as to endanger and threaten his life, limb, and health as to render their further living together insupportable, he left his wife, Addie C. Buford, for parts unknown to her; and that as, between them, he is entitled to all the money tendered into court by plaintiff, for the reason that the policy belongs to him, he having paid the premiums, surrendered the policy to the company for cancellation, and, under its terms, the cash value is payable to the insured. He seeks to have the policy canceled, the money tendered into court paid

over to him, and the relief prayed for by his wife be denied.

The court submitted the case to a jury, and, in response to special issues, the jury made the following findings: (1) That Jesse Elmer Buford did not deliver the policy of insurance, issued by the Southwestern Life Insurance Company upon his life and involved in this suit, to Mrs. Addie C. Buford as security for any indebtedness due by him to her; and (2) that Jesse Elmer Buford owed Mrs. Addie C. Buford the sum of $182.31 "for moneys advanced by her to or for him out of her separate property."

Obviously, the findings of the jury do not determine the issues involved in this case as to the amount of money due by Jesse Elmer Buford to Addie C. Buford, nor the amount Addie C. Buford paid out of her separate funds to the Southwestern Life Insurance Company as premiums to maintain the policy of insurance in force. These issues are clearly reflected in the pleadings, and are fully supported by substantial evidence.

Based upon the findings of the jury, the court entered judgment, accepting the interpleader and discharging the Southwestern Life Insurance Company from any further liability under the policy, and, further, that the fund tendered into court was $649.47; that the cross-defendant, Jesse Elmer Buford, recover all of the money tendered into court, both as to the insurance company and the appellant; that appellant recover against Jesse Elmer Buford the sum of $182.31; and that all costs be taxed against the fund.

Appellant, in due time, presented exceptions to the charge of the court, challenging its action in limiting the submission in special issue No. 2 as to the amount Jesse Elmer Buford was indebted to her "for moneys advanced by her to or for him out of her separate estate," and in refusing to peremptorily instruct the jury on the uncontroverted legal testimony to find in her favor against the defendant Jesse Elmer Buford upon notes and checks aggregating in excess of $7,500, and, furthermore, in a motion for new trial, among other things, challenge the correctness of the judgment rendered on the jury's verdict, limiting her recovery alone to the sum of $182.31 against the other defendant, refusing her a right to a division of the money tendered by the plaintiff into court, or a lien thereon for the amount found by the jury she had advanced "to or for" the codefendant out of her separate estate, and decreeing to the defendant, Jesse Elmer Buford, the entire fund.

The evidence on which appellant's contentions are based shows that in 1912 Jesse Elmer Buford and Addie C. Buford were married and continued to live together, with some intermission, until February 23, 1927, when Mr. Buford left his wife permanently with intention of never returning. During most of their married life, Mr. and Mrs. Buford were employed in separate and distinct occupations, and, at times, Mrs. Buford would aid her husband in the carrying on of his business, drawing a salary from him for such employment. Mr. Buford was conducting a commercial business college in the city of Dallas, and, during the early years of their married life, the earnings of the college, together with Mr. and Mrs. Buford's individual salaries, were deposited in a banking institution to their joint account, and used for the school and family living expenses, but, in the latter years, since 1924, with the knowledge of the husband, the bank account stood in the name of the wife. In 1917 to 1922, Mrs. Buford came into possession, by inheritance from her father's estate, of at least $3,500, which she invested and reinvested in real property and other securities, and consistently held same intact from the community earnings.

It is admitted in evidence that on October 6, 1924, Jesse Elmer Buford left his wife with the avowed intention of never coming back, turning over to her all of the community property and granting to her full power and authority to do with it as she pleased, however, in a few weeks after leaving, he did return, renewed his marital relations, and remained to live with his wife until their final separation, February 23, 1927, and from that time hence the property and fund stood in the name of the wife. Mrs. Buford paid out of funds in her possession the insurance premiums in excess of the cash tendered into court and were paid in the absence and without the knowledge or consent of her husband in order to keep the policy alive, and Mr. Buford personally paid none of the premiums, he being, at the time, in the state of Florida and not in communication with his wife.

Mrs. Buford testified that from time to time, enumerating dates and figures, she, out of her separate estate, loaned to her husband sums of money, and paid out for his account to his various creditors a sum aggregating more than $7,500; that on October 26, 1923, her husband executed and delivered to her, which she claims was for money advanced to him, a note, identified and offered in evidence, for the sum of $500, and, on January 16, 1924, her husband executed another

note, identified and offered in evidence, for the sum of $6,000, and a chattel mortgage, identified and offered in evidence, on the college equipment as security for the above indebtedness. Neither of the notes has been paid.

Mrs. Buford further testified that from 1923 to the time of the institution of this suit, she has paid, out of her separate funds, to the Southwestern Life Insurance Company the annual premiums on the policy, exhibiting and tendering into court the company's receipts therefor, aggregating more than the cash surrender value of the policy to maintain it in full force and effect, and that the insured assigned and transferred by delivery the policy as security for the indebtedness due to her, and the premiums paid by her to the insurance company.

Mr. Buford denied the existence of any indebtedness due by him to appellant, denied the assignment, transfer, and delivery of the policy of insurance to her as security for any indebtedness, and denied the payment of any annual premium by her to the insurance company out of her separate estate. He did, however, admit the execution of the $500 note, the $6,000 note, and the mortgage, and, over appellant's objection, he was permitted to testify that, quoting, "Mrs. Buford had been persistently after me to get all the property in her name on the pretext, as she explained, that we were being sued occasionally. * * * Her contention was that if the property was all in her name a judgment would not attach to it. And I demurred to it to the extent of pretending to forget it. She reminded me on the second occasion that I had not done it; and on the third occasion, one evening, like a bolt out of the blue she attacked me with a broom, the handle of the broom, and beat me most unmercifully. After she had completed her tirade she said, 'Well, now I guess you will execute me a note and mortgage like I have tried to get you to,' and I did. I executed the note and signed it; executed the mortgage and signed it; had it recorded." He also testified that the $500 note was executed as a salary indebtedness due and to be paid to his wife for labor done by her in the college, and was executed by him under circumstances amounting to duress. He further testified that on February 23, 1927, he left his wife and went to the state of Florida with no intention of returning, leaving the community property to his wife; that his leaving and not returning home was due to his wife's uncanny conduct toward him; and that the premiums on the policy were paid by his wife out of community funds he left with her.

■■ We think it is evident that Mrs. Buford made out a prima facie showing that the premiums were paid out of her separate property, and, if the testimony of Mr. Buford raised the issue that the premiums were paid out of community funds, the issue of fact is deemed to have been waived, since it was not submitted to and passed upon by the jury. In the case of Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084, 1085, the rule is well stated that, "when the omitted issue constitutes a complete ground of recovery, or a complete defense, a failure to request a submission of that issue waives said ground of recovery or said ground of defense." So, in the instant case, if the evidence raised the issue of whether the funds standing in the name of the wife from which the premiums were paid was community, it was incumbent on the defendant Jesse Elmer Buford to have requested and have submitted to the jury the issue involving the payment of the premiums by the defendant Addie C. Buford out of community funds, and have a finding to that effect, to overcome the prima facie presumption that they were paid by Mrs. Buford out of her separate estate, otherwise, the defendant Mr. Buford waived the issue. Therefore, in the light of the record, we must assume that the premiums were paid by appellant out of her separate estate, and, as she was the wife of the insured, and the beneficiary in the policy, she had an insurable interest in her husband's life during their marital relationship, and had the right to be reimbursed, at least, for the amount she paid to keep the policy alive, and, having this right, she has an equitable lien on the policy and the funds derived therefrom superior to the rights of the insured. Hatch v. Hatch, 35 Tex. Civ. App. 373, 80 S. W. 411; Journeay v. Journeay (Tex. Civ. App.) 70 S.W.(2d) 472.

■ The cross-defendant, Mr. Buford, claims that all the property which Mrs. Buford had was community property, since she by duress forced him to transfer all of the community funds to her account, and to execute the notes of $500 and $6,000, respectively. In this connection, appellant contends that such is not a defense, since there was no pleading of duress and no issue submitted to the jury for its determination on the question. In this we are in accord with appellant's contention.

Article 4614, R. S. (as amended by Acts 1929, c. 32, § 1 [Vernon's Ann. Civ. St. art. 4614]), provides that all property of the wife,

"both real and personal, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, as also the increase of all lands thus acquired, shall be the separate property of the wife." The courts of this state have held since an early date that the husband could make a gift of both community and his separate property to the wife and constitute such gift the wife's separate property, and, where the property stands in her name, it is prima facie separate property. Garcia De Garca v. Galvan, 55 Tex. 53; Emery v. Barfield (Tex. Civ. App.) 138 S. W. 419; Jones v. Humphreys, 39 Tex. Civ. App. 644, 88 S. W. 403; Tison v. Gass, 46 Tex. Civ. App. 163, 102 S. W. 751, 754; Du Perier v. Du Perier, 59 Tex. Civ. App. 224, 126 S. W. 10; Cauble v. Beaver-Electra Ref. Co., 115 Tex. 1, 274 S. W. 120; Minchew v. Hankins (Tex. Civ. App.) 278 S. W. 306; Hunter v. Hunter (Tex. Civ. App.) 45 S. W. 820. Thus, if the evidence of the defendant Mr. Buford raises the issue of duress to avoid the prima facie showing of his wife that the funds and notes were her separate property, the pleadings should also present the question, and, in the absence of such pleadings, the evidence that duress was exerted to secure possession of the funds and the execution of the notes is not sufficient to overcome the legal presumption. Chouquette v. McCarthy (Tex. Civ. App.) 56 S. W. 956 (writ denied); Shriver v. McCann (Tex. Civ. App.) 155 S. W. 317; Parker v. Allen, 33 Tex. Civ. App. 206, 76 S. W. 74; Shelton v. Jackson, 20 Tex. Civ. App. 443, 49 S. W. 415; Rushing v. Bank (Tex. Civ. App.) 162 S. W. 460.

The record in this case, as we view it, shows that the defendant Mr. Buford did not plead duress in having the community funds placed in the name of his wife and the execution and delivery of the notes to her; however, if duress had been pleaded by the defendant, and his testimony raised the issue, there could be nothing more than a jury question which would be unavailing as a defense in the absence of a request for and the procuring of a submission of the issue to the jury and have a finding thereon in his favor. The issue of duress, to be a complete defense to appellant's contentions, the law places upon the one claiming the defense to not only plead and prove the issue, but request its submission to the jury, and the failure of such request waives the defense. Ormsby v. Ratcliffe, supra.

We are of the opinion that appellant's assignments challenging the limitation placed on the issue involving the amount due by the defendant Mr. Buford to appellant, to an amount advanced "to or for" him, and the judgment rendered by the court limiting her recovery to $182.31, without decreeing a subsisting lien on the funds tendered into court by the plaintiff's present errors, calling for a reversal of the case as to appellant and the cross-defendant, Jesse Elmer Buford.

Appellant submits no assignment as to the action of the trial court in accepting the interpleader and discharging the Southwestern Life Insurance Company from further liability under the policy; no fundamental error is reflected in the record and the evidence and findings of the jury being replete, to sustain the court's action, therefore the judgment as to the appellee Southwestern Life Insurance Company should be affirmed.

Therefore, the judgment of the lower court as to appellant and the appellee Jesse Elmer Buford is reversed and the cause remanded, and, as to the appellee Southwestern Life Insurance Company, the judgment is affirmed.

Affirmed in part; reversed and remanded in part.