the facts pertinent to the State's case were presented by the State and the court found in its favor.

The judgment of the trial court is affirmed.

## PIONEER MUT. COMPENSATION CO. v. DIAZ.

### No. 4319.

Court of Civil Appeals of Texas. El Paso.
June 24, 1943.

Rehearing Denied July 15, 1943.

Joseph G. Bennis, of El Paso, for appellant.

R. P. Langford and J. H. McBroom, both of El Paso, for appellee.

SUTTON, Justice.

This is an appeal from the 41st District Court of El Paso County. The appellant was defendant below. J. A. Diaz, V. A. Diaz and Guillermo Caballero were plaintiffs. The controversy is largely between defendant and J. A. Diaz. The parties will be described here as in the trial court.

The trial was.to a jury and the case was submitted on special issues. The verdict was favorable to the plaintiff J. A. Diaz, and judgment was entered in his favor for $1812.40 and costs, and that the other plaintiffs take nothing. From that judgment the defendant has appealed.

The suit arose on a policy of public liability insurance issued by the defendant to J. A. Diaz, as the owner of a delivery

sedan, July 12, 1941. J. A. Diaz operated on the relevant dates here a cafe or cafes known as the Barrel House and, under a blanket power of attorney from his brother, V. A. Diaz, the Barrel House Liquor Store, in the City of El Paso. Caballero was an employee of Diaz. On March 19, 1942, while Caballero was driving the truck upon which the insurance had been written he accidentally killed a minor, Lorenzo Hernandez, Jr. The parents sued J. A. Diaz and Caballero. The defendant undertook the defense of that suit upon the express agreement and understanding it did not waive any of its defenses against liability on the policy. That suit was compromised with the consent of the defendant for $1800 and $12.40 court costs, which was paid by J. A. Diaz. This suit was to recover the amount of that judgment. The result was as above indicated.

The defendant has various assignments and points. They have to do primarily with the ownership of the truck and claimed prejudicial argument on the part of plaintiffs' counsel. As we understand the facts, they are largely undisputed. Fletcher G. Belk, Jr., wrote insurance for the Diazes generally. Shortly before the issuance of the policy here involved, Mr. Belk called at the office of J. A. Diaz to deliver some policies of insurance. Diaz told him he was glad he had called because he desired insurance on a delivery sedan, the one here involved. He explained he wanted the policy written in his and Adrian Garcia's names, because the truck was registered in Garcia's name, and under the laws of the State he could not deliver his own goods if the truck was registered in his name, and that Garcia had a permit. Two companies declined the business because it was written in the two names. Mr. Belk explained this to Diaz, whereupon Diaz told him just to write it in his name alone.

The defendant's home office is at Albuquerque, New Mexico. Mr. Belk operates an insurance agency in El Paso and represented the defendant as a procuring agent. On July 10, 1941, Mr. Belk wrote the defendant as follows:
"Gentlemen:

"Please issue a policy for us on the following risk:

"J. A. Diaz
"405 S. El Paso St.
"El Paso, Texas
"Owner—Barrel House Liquor Store
"P. L. $5,000/10,000

"P. D. $5,000
"Act. Value (Comprehensive)
"1941 Chevrolet Mas Delivery Sedan
"Motor AA 470107
"ser. AGo1–17831
  "Very truly yours,
    "Mutual Insurance Agency,
    "By (Sgd.)  Fletcher G. Belk, Jr."
Stamped:
  "Received Jul 11 1941
"ML  1:15"

Upon this letter, which constituted the only application made for the insurance, the policy was written, returned to Mr. Belk and by him delivered to Diaz.

The policy contained certain items under the heading, "Declarations." No. 1 was: "Name of the insured, J. A. Diaz." No. 6 was: "The named Insured is the sole owner of the automobile except as herein stated No Exceptions." The defendant contends the truck was owned by Garcia and leased from him by Diaz, and under the foregoing Declarations it is relieved.

Diaz testified he bought the truck new from the dealer and paid cash for it. His explanation for registering it in Garcia's name was that he had theretofore hired Garcia, who had a State liquor delivery permit in connection with his taxi business, to deliver liquors for him; that the war situation and increase of troops at Fort Bliss adjacent to El Paso and other increase of business rendered deliveries difficult; that he could not register the truck in his own name and deliver his own goods; that he made the arrangement with Garcia to register it in his name; that Diaz would furnish the driver and keep possession of the truck and pay Garcia a commission on the business done with the truck. He testified he kept the truck at all times. On advice of his counsel Diaz took a demand note and a mortgage on the truck for the purchase price of $800.00 to protect him against any possible transfer by Garcia.

As we gather it, defendant's position and contention is the registration of the truck in Garcia's name constituted him the owner and that no title passed to Diaz under the Motor Certificate of Title Law. Diaz made a sworn statement after the accident to the defendant's adjuster, which is construed by defendant to be contrary to his testimony above referred to and further proof of ownership in Garcia.

We understand the defendant admits its liability on the policy if Diaz was

the owner of the truck at the time the insurance was written and the accident occurred, unless relieved on grounds of public policy. We are of the opinion the jury finding that Diaz was the owner is supported by the evidence. The Certificate of Title Act, Art. 1436—1, Vernon's Penal Code, declares the legislative purpose and intent, Sec. 1, to be to lessen and prevent theft, the importation and traffic in stolen motor vehicles, and to enforce a disclosure of all liens and encumbrances. The act does not prohibit the registration of a motor vehicle in the name of one other than the true owner, nor render the title invalid or prohibit the passing of title in such event. It merely provides, after the first sale the title shall pass and vest only by a transfer of the certificate of title, Sec. 33, by the owner designated in the certificate of title. "Owner designated," indicates an owner may be different from the true owner.

Under the prior law motor vehicles were required to be registered, and that subsequent sales should be by delivery of the registration certificate and written bill of sale. Under such prior provisions it was held the registration of a motor vehicle in the name of one merely raised the presumption of ownership in him, "which is not evidence but rather a rule of procedure or an 'administrative assumption' which 'vanishes' or is 'put to flight' when positive evidence to the contrary is introduced." Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763, at page 767, pars. 3 and 4, and cases there cited, (T). It becomes unnecessary here to determine whether viewed from the defendant's standpoint the proof was sufficient to raise a jury question, because the result is the same. The jury found from the facts Diaz was the owner. The rule, we think, applicable under the certificate of title act in the absence of a prohibition against the registration of a motor vehicle in the name of one other than the true owner. This conclusion renders unnecessary a consideration of any claims of fraud and misrepresentation with respect to ownership.

In addition to what has been said we are of the opinion if at all times Diaz had a legal right, and we think he did, to have the title certificate transferred to him by Garcia, then he was the owner within the meaning of the policy. East Texas Fire Ins. Co. v. Dyches, 56 Tex. 565.

The defendant complains of the failure of the court to declare a mistrial on account of argument of counsel. It complains because counsel said to the jury: "An answer to Question No. One is an answer to the whole law suit," and "That the contract will stand unless you find fraud." Issue No. 1 inquired if J. A. Diaz was the owner of the automobile covered by the insurance.

It is not shown what argument preceded or followed these statements. There is nothing to indicate what application, if any, was made of them. They were in nowise connected. One statement was made by one counsel and the other by another. Certainly standing alone they cannot advise the jury of the effect or result of any answer.

Complaint is made that the trial court erred in his definition of "owner." The definition is in the terms of the statute, Certificate of Title Act, supra, Sec. 4, coupled with the statutory definition of "first sale," Sec. 7 of the Act, and is correct.

The defendant insists that it is protected against liability on grounds of public policy in as much as Diaz and Garcia had entered into an agreement and conspiracy to violate the liquor control statutes of the State. The policy contained no exclusion provision to such effect, nor can it be said the risk of the defendant is increased as the result of such an alleged violation of the law. The policy of insurance does not encourage and promote any violation of the law. In such circumstances the generally accepted rule seems to be the insured may recover. See 29 Am.Jur., Sec. 194, 195 and 196, pp. 208–209; Springfield Fire & Marine Ins. Co. v. Cannon, Tex.Civ.App., 46 S.W. 375, at page 376; and Maryland Cas. Co. v. Cronholm, 5 Cir., 116 F.2d 494.

We think there is no error in the trial court's judgment and it is affirmed.

WALTHALL, J., not participating.