The trial court had no power to confine relator until he has paid the $10,000 awarded the wife by the divorce decree.

I would enlarge the relator and discharge him from the contempt judgment.

SMITH, J., joins in this opinion.

Mary Jane HAMILTON, Appellant,

v.

CHARLES MAUND OLDSMOBILE-CADILLAC COMPANY, Appellee.

No. 10840.

Court of Civil Appeals of Texas.

Austin.

June 14, 1961.

Rehearing Denied July 5, 1961.

Cofer & Cofer, Austin, for appellant.

F. L. Kuykendall, Austin, for appellee.

GRAY, Justice.

Appellee, Charles Maund Oldsmobile-Cadillac Company, sued M. W. Hamilton and appellant, Mary Jane Hamilton to recover on a promissory note and to foreclose a chattel mortgage lien on a 1959 Willys pickup truck.

The note is dated January 14, 1959, it was executed by M. W. Hamilton and is payable to appellee. The chattel mortgage is of even date with the note and was executed by M. W. Hamilton. Appellant was not a party to the note or the mortgage.

The pickup truck was purchased from P. K. Williams Motors on January 10 or 13, 1959 for $2,900 cash.

After the suit was filed M. W. Hamilton gave appellee his permission for appellee to take possession of the pickup truck, together with another automobile not in question here. However the pickup truck was in appellant's possession, she refused to deliver it, appellee sequestered it, received bids for its purchase and thereafter sold it for $1,890.

The evidence shows that M. W. Hamilton and appellant married in October 1958 and lived together until on or about January 23, 1959. After their marriage appellant loaned M. W. Hamilton $100,000 which

was deposited in an Austin bank and the account was designated "M. W. Hamilton Operating Account." Thereafter and on December 22, 1958, the account being depleted, M. W. Hamilton borrowed $12,500 from the bank and deposited it in the account—appellant said this sum was to pay her back. On January 14, 1959 M. W. Hamilton borrowed $6,000 from appellee and gave the chattel mortgage supra as security to appellee. This sum was deposited in the above operating account. Both M. W. Hamilton and appellant drew checks on the operating account.

The Willys pickup truck was purchased for $2900 cash which was paid out of the above operating account. Both M. W. Hamilton and appellant were present at the time the purchase was made. The certificate of title to the pickup truck was issued January 23, 1959 and listed M. W. Hamilton as owner.

Appellant and M. W. Hamilton separated January 23, 1959, at which time she had possession of the pickup truck and it remained in her possession until it was sequestered. She also received the certificate of title to the pickup truck and retained it until the trial when it was introduced in evidence.

Appellant testified that she did not know about the loan made to M. W. Hamilton by appellee and that she knew nothing about the chattel mortgage given to secure the loan until sometime after January 14, 1959. She also said that she and M. W. Hamilton agreed that the pickup truck was to be hers but did not say when the agreement was made. Her testimony in this respect is not disputed.

On February 25, 1959 M. W. Hamilton applied for a certified copy of the certificate of title to the pickup truck. This certified copy was delivered to appellee and was used by it for the sale of said truck. No lien is shown on the certified copy or the original certificate of title.

M. W. Hamilton did not appear or testify at the trial.

By her answer and cross-action appellant alleged that the pickup truck was her separate property; that the original certificate of title was in her possession and had been since it was issued; that the lien claimed by appellee is not noted thereon and that the said lien is void. She alleged that the writ of sequestration supra was wrongfully issued; that the pickup truck was wrongfully seized and taken from her possession, and that such seizure constitutes conversion. She prayed for judgment that appellee take nothing as against her; that the writ of sequestration was wrongfully issued, and for damages for conversion.

A nonjury trial was had and judgment was rendered for appellee as prayed for and that appellant take nothing by her cross-action.

The trial court filed findings of fact and conclusions of law and among other things he found:

"9. At the time plaintiff loaned to M. W. Hamilton the sum of $6,000 on or about January 14, 1959, notation was made on the certificate of title to the Cadillac showing that M. W. Hamilton was indebted to plaintiff in the sum of $6,000 and that a lien was given on said Cadillac to secure the payment of same. At the time the loan was made on January 14, 1959, a certificate of title covering the 1959 Willys one-ton pickup truck had not been issued to M. W. Hamilton by the Texas Highway Department but same was issued January 23, 1959, and the certificate of title named M. W. Hamilton as the owner of said Willys truck. On the date the loan of $6,000 was made by the plaintiff to M. W. Hamilton a certificate of title covering the Willys pickup truck had not been issued to M. W. Hamilton, and therefore, a notation showing that a lien had been given by M. W. Hamilton to the plaintiff to further secure the payment of said $6,000 loan, did not appear on the certificate of title to the Willys truck, and in lieu of such

a notation, the defendant, M. W. Hamilton, gave to the plaintiff a chattel mortgage on said Willys truck to further secure the promissory note executed by M. W. Hamilton to plaintiff on January 14, 1959.

"13. The Court finds that, at the time the 1959 Willys pickup truck was purchased from P. K. Williams Company, both M. W. Hamilton and Mary Jane Hamilton were present at the time the necessary papers were prepared and signed by the parties to said transaction. The Court further finds that the 1959 Willys pickup truck purchased from P. K. Williams Company was not the separate property of the defendant, Mary Jane Hamilton, although she and M. W. Hamilton had an understanding that the Willys pickup truck was to be hers.

"15. After M. W. Hamilton and Mary Jane Hamilton separated the original certificate of title to the Willys truck came in the mail addressed to M. W. Hamilton, 1117 Enfield Road, Austin, Texas, where Mary Jane Hamilton was residing, and she opened the envelope containing said original certificate. From the day said certificate of title came in the mail said certificate of title was continuously in the possession of the defendant, Mary Jane Hamilton, until the trial of this case when it was placed in evidence."

The trial court concluded that the chattel mortgage lien on the pickup truck was a valid and enforceable lien as between M. W. Hamilton and appellee and that under the terms of the mortgage appellee had the legal right to take possession of the truck and to sell the same.

"3. Since the defendant, Mary Jane Hamilton, accepted some of the benefits from the $12,500 loan from the Austin National Bank, Austin, Texas, and from the $6,000 borrowed by M. W. Hamilton from plaintiff, in that said sums were deposited in the 'M. W.

Hamilton, Operating Account' in the Austin National Bank, Austin, Texas, and upon which account both M. W. Hamilton and Mary Jane Hamilton wrote checks, she is now estopped from asserting any claim to and against said 1959 Willys pickup truck in view of the fact that the purchase price for said 1959 Willys pickup truck came from money borrowed by M. W. Hamilton from the Austin National Bank, Austin, Texas.

"5. The Court further concludes as a matter of law that since M. W. Hamilton, to whom the certificate of title was issued as owner to the 1959 Willys pickup truck, he, the said M. W. Hamilton, had the right to execute the instrument dated April 27, 1959, introduced in evidence herein, authorizing the plaintiff to take possession of said 1959 Cadillac and 1959 Willys pickup truck and sell them to the highest and best bidder.

"7. The Court concludes, as a matter of law, that, although M. W. Hamilton and Mary Jane Hamilton had an understanding that the Willys pickup truck was to be hers, such understanding did not have any effect upon the rights of plaintiff herein to foreclose the chattel mortgage lien given to plaintiff by M. W. Hamilton on said Willys truck to secure the loan of $6,000 made by plaintiff to M. W. Hamilton on January 14, 1959."

He also concluded that appellant was not entitled to recover damages from appellee.

By appellee's pleadings it prayed for a foreclosure of the chattel mortgage lien on the pickup truck. It filed a general denial to appellants' cross-action and by a trial amendment it alleged that appellant ratified the acts of M. W. Hamilton in borrowing the money from appellee and giving the chattel mortgage

"* * * for the reason that the testimony shows that defendant, Mary Jane

Hamilton, used and accepted the benefits of the money loan by plaintiff to her husband, M. W. Hamilton, and which loan was secured by the chattel mortgage on the Willys pickup truck described in said chattel mortgage."

The rights of the parties here must be determined under their right to change the status of the truck from community property to separate property, and the provisions of the "Certificate of Title Act." Art. 1436–1, Vernon's Ann.P.C. That Act relates to the certificates of title to automobiles and as to them it repeals the chattel mortgage registration statutes. It also prescribes the steps to be taken in fixing liens upon motor vehicles. Bank of Atlanta v. Fretz, 148 Tex. 551, 226 S.W.2d 843, Guinn v. Lokey, 151 Tex. 260, 249 S.W.2d 185.

Sections 36, 42 and 44 of the Act provide:

"Sec. 36. Should a certificate of title, 'Duplicate Original' or 'Original,' be lost or destroyed, the owner or lien holder thereof may procure a certified copy of same directly from the Department by making affidavit upon such form as may be prescribed by the Department from time to time * * * provided however, that the certified copy of the certificate of title marked 'Original' shall issue only to the first lien holder where a lien is disclosed thereon. Said certified copy and all subsequent certificates of title issued, until transfer of ownership of said motor vehicle, shall be plainly marked across their faces 'Certified Copy,' and all subsequent purchasers or lien holders of said motor vehicle shall acquire only such rights, title, or interest in such motor vehicles as the holder of the said certified copy had, provided however, that upon the transfer of title to said motor vehicle, the words 'Certified Copy' shall be eliminated from the new certificate of title. Any purchasers or lien holders of such motor vehicle may at the time of such purchase or at the time lien is established require the seller or owner to indemnify him and all subsequent purchasers of said motor vehicle against any loss which he or they may suffer by reason of any claim or claims presented upon the said original certificate of title * * *."

"Sec. 42. No lien on any motor vehicle shall be valid as against third parties without actual knowledge thereof or enforceable against the motor vehicle of any such third parties as the issuance of a certificate of title thereof, unless an application for a new title is made as prescribed in this Act and all first and subsequent liens noted by the Department thereon."

"Sec. 44. No lien on any motor vehicle to which a receipt or certificate of title has been issued shall be valid as against third parties without actual knowledge thereof, or enforceable against the motor vehicle of any such third parties, unless the notation of said lien shall have been caused to be made on receipts and certificates of title on said motor vehicle, as provided in this Act."

Under Section 44 supra a lien not noted on the certificate of title to a motor vehicle is unenforceable against a third person. Birdwell v. Pacific Finance Corp., Tex.Civ.App., 259 S.W.2d 957. First State Bank of Corpus Christi v. Austin, Tex.Civ. App., 315 S.W.2d 390. Er. ref.

"The act does not prohibit the registration of a motor vehicle in the name of one other than the true owner, nor render the title invalid or prohibit the passing of title in such event. It merely provides, after the first sale the title shall pass and vest only by a transfer of the certificate of title, Sec. 33, by the owner designated in the certificate of title. 'Owner designated,' indicates an owner may be different from the true owner." Pioneer Mut. Compensation Co. v. Diaz, Tex.Civ.App., 178 S.W.2d 121, 123.

The Supreme Court approved the above statement and in considering an objection to the trial court's definition of owner said:

"In effect the objection was not that the definition was too broad when applied to a case like this, because it included persons merely claiming the title to the vehicle and persons having a right to operate same pursuant to a lien, but that under the above statute Diaz could not be the owner, because the truck was registered in the name of Garcia. We approve the holding of the Court of Civil Appeals that the statute should not be given that construction. The registration in Garcia's name raised the presumption of ownership. Such presumption, however, is not evidence, but is 'an administrative presumption' which vanishes when positive evidence to the contrary is introduced. Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763." Pioneer Mut. Compensation Co. v. Diaz, 142 Tex. 184, 177 S.W.2d 202, 204.

Appellant's four points are briefed together. They are to the effect that the trial court erred in: enforcing appellee's asserted lien against her because appellee never acquired a lien against her since she owned and possessed the pickup truck and held the lien free original certificate of title; concluding as a matter of law that the pickup truck was not the separate property of appellant; holding that appellee was estopped to assert any claim to the pickup truck and refusing to render judgment for appellant for damages.

Appellant's testimony that she knew nothing about the note and the chattel mortgage executed by M. W. Hamilton in favor of appellee is undisputed by the testimony of any witness or by any facts or circumstances in evidence. The evidence also shows, without dispute, that she held the original certificate of title to the pickup truck in her possession; that no lien is noted on such certificate of title, and that she told M. W.

Hamilton that such certificate of title was in her possession. The evidence also shows that she was claiming the pickup truck as her own and that she was not a party to the note or the chattel mortgage.

Even if it be said that factually appellant is shown to be a third party as to the chattel mortgage lien it does not necessarily follow that the truck in question was her separate property. The trial court found it was not.

In addition to the cases cited supra the following cases state rules applicable to the transfer of motor vehicles without complying with the Certificate of Title Act: Erwin v. Southwestern Inv. Co., 147 Tex. 260, 215 S.W.2d 330. Hoskins v. Carpenter, Tex.Civ.App., 201 S.W.2d 606. Er. ref., n. r. e.; Wise v. Cain, Tex.Civ.App., 212 S.W. 2d 880. Er. ref., n. r. e.

The last two of the above cases concern the gift of a motor vehicle but not between a husband and wife. We think that neither is controlling here.

The truck was acquired after the marriage of the parties, it was paid for out of funds the trial court found belonged to the community estate (the $12,500 loan from the bank). Then because the community estate furnished the funds for its purchase it belonged to that estate.

If the effect of the understanding between appellant and M. W. Hamilton was that the truck was to be appellants was effective as a gift to her then it was and is her separate property. Art. 4614, Vernon's Ann.Civ.St. In such case the holding in Wise v. Cain supra would apply and estoppel would prevent M. W. Hamilton from questioning the transfer, and since appellee acquired its chattel mortgage subsequent to such gift it took a lien on only such title as M. W. Hamilton then had. Sec. 36 supra.

It is settled in this State that the husband may make a gift of his interest in the community, as well as of her separate property,

**950**

to the wife. Buford v. Southwestern Life Ins. Co., Tex.Civ.App., 77 S.W.2d 318. In the case here the evidence does not show when the agreement, or understanding, between appellant and M. W. Hamilton was had—whether before or after the truck was acquired. The evidence of gift is meager, it consists of the statement of appellant that the truck was to be hers, its use on a ranch purchased by the parties after their marriage, possession by appellant and her possession of the certificate of title obtained by appellant by taking it from mail addressed to M. W. Hamilton.

 Appellant says that the $12,500 borrowed by M. W. Hamilton from the bank "was to pay her back" and that because the truck was purchased with this money it was her separate property. It is the general rule that money borrowed during the marriage is community property provided however that the intention of the parties shall control its status. 23 Tex.Jur. p. 127, Sec. 104. Here the evidence shows that the $12,500 was used by the parties for the purchase of the truck in question, to pay household expenses and the account was subject to the checks of both the husband and wife. These facts are sufficient to overcome the indefinite statement of appellant that the money was borrowed "to pay her back." The money was borrowed on a community obligation (the note), absent sufficient evidence to the contrary, the money so borrowed was community property. Gleich v. Bongio, 128 Tex. 606, 99 S.W.2d 881. It follows that property (the truck) purchased with this borrowed money is also community.

The testimony of appellant that the truck was to be hers does no more than show a stipulation of the parties that such truck would be appellant's which in itself is not sufficient to constitute the truck the separate property of appellant. Kellett v. Trice, 95 Tex. 160, 169, 169 S.W. 51. At most this was only an agreement to effect a change in the status of community property. Tittle v. Tittle. 148 Tex. 102, 220 S.W.2d

637. Moreover if it be said that, under appellant's pleadings that she owned the truck and her testimony that it was to be hers, an issue of fact was presented then such issue of fact was resolved against her. Strickland v. Wester, 131 Tex. 23, 112 S. W.2d 1047.

We have stated the facts and we think estoppel against either party here is not shown.

Because it is our opinion that reversible error is not presented the judgment of the trial court is affirmed.

Affirmed.