## MARY BISHOP AND ANOTHER v. M. V. HONEY.

1. A plea of coverture, interposed to a petition on a contract, is a plea in abatement of the writ, and must, therefore, be verified by oath.

2. To an action on a written contract the defendant pleaded that fraud was practised upon her by her own attorney, in substituting the contract sued on in place of a prior one between her and the plaintiff. *Held*, that this plea, being in substance a denial of the contract, was tantamount to a plea of *non est factum*, and as such it should have been verified by oath.

3. To suit by a mechanic on a building contract, the defendant answered that she had the house built for a house of prostitution, and that plaintiff, when he undertook and erected the house, well knew such to be its destined use, contrary to good morals, etc. *He'd*, that the answer was frivolous—there being no allegation that the plaintiff was to be concerned or interested in the contemplated illegal uses of the building.

4. Pending suit by a mechanic to enforce his statutory lien on a house erected by him for a lessee of a town lot, the landlord of the lessee removed the house to a different lot, claiming the right to take it for rents due him, and because it was a nuisance on the first site, and alleging that his outlays in removing and refitting the house were a certain amount which should be first refunded to him from the proceeds, in preference to any lien of the plaintiff. *Held*, that the court below correctly disregarded these pretenses of the landlord, who acted *lis pendens*, and must abide the result of the suit.

APPEAL from Galveston.   Tried below before the Hon. George R. Scott.

The court states in the opinion such of the facts as it deems material.

I. *McLemore & Hume*, for the appellants.—Even had Bishop contracted as a *feme sole*, she is not thereby estopped from pleading coverture. (Chitty on Contracts, 752; Davenport v. Nilson, 4 Campbell, 26.)

Bishop's plea of coverture was a plea in bar, and not required to be sworn to. Appellee's exception to that plea should not have been sustained. (1 Chitty on Pleading, 449, note 6, 477; James v. Fowks, 12 Mod. R., 101; 2 Bright's Husband and Wife, 40, and 69–75, reviewing the leading cases; Kavanaugh v. Brown, 1 Texas, 481; Nicholson v. Ingram, 24 Texas, 630; Story on Contracts, § 94; Marshall v. Ratton, 8 Tennessee, 545; 14 Serg. and Rawle, 379.) Her execution of such a contract would be a nullity even in equity. This has been decided directly in cases where notes were made by married women. (Goodhue v. Barmence, Rice's Eq. R., (So. Ca.) 239; Wilson v. Cheshire, 1 McCord Ch. R., (So. Ca.) 239. See also Story's Equity Jur., § 1397.)

II. Bishop's plea of fraud and a different prior contract was not a plea of *non est factum*, and should have been sustained. It expressly acknowledges the manual execution of the contract sued on. It is a plea in confession and avoidance. (1 Saunders' Pl. & Ev. 656–7; 1 Chitty on Pleading, 743; Gardner v. Gardner, 10 Johns., 47; Legg v. Robinson, 7 Wend., 194; Courcier v. Graham, 1 Ohio, 346; Reynolds v. Rogers, 5 Ohio, 172; Brazee v. Blake, 5; Id., 340; Granger v. Granger, 6 Id., 42.)

III. The demurrers of defendants should have been sustained; for, first, the petition nowhere alleges that Honey was a "mechanic" of any character. The lien is only given to "master builders or mechanics." (Paschal's Digest, articles 4592–4.) Second, appellee sued on a contract, and to foreclose a statutory lien as incidental to that contract, without alleging performance. He was permitted to allege and prove a *quantum meruit*, and at the same

time to foreclose a lien under a contract provided for by statute. His prayer for relief on a *quantum meruit* is, of itself, an abandonment of the contract and the lien under it, and he could only have been entitled to a general judgment. (Paschal's Digest, articles 4592–4; Parsons on Contracts, 34–5; O'Connor v. Van Homme, Dallam, 429.)

IV. The court erred, first, in instructing the jury that if the contract was proved by plaintiff he was entitled to recover against "defendants" the amount due thereon. Brown was no party to the contract, and under no responsibility to the plaintiff. The only possible judgment that could have reached him in any way, was one *in rem* against the house for such sum as it was proven to be worth at the time of his alleged conversion of it. No value at that time was proven; and if it had been, the judgment should only have been for that value, to be realized from the house, not from his general estate. Second, the court erred, in the absence of any allegation by plaintiff that he was a mechanic, in making the "thirty days," record of the contract the only essential condition of his right to a lien. Third, it was error to assume in the charge to the jury that any amount found due plaintiff on the contract was a "debt due him from defendants." (Paschal's Digest, article 1464; 24 Texas, 543; 20 Id., 728; 9 Id., 502.)

V. It was error to charge the jury, that the fact of the house being built for a house of prostitution, and the appellee's knowledge thereof, was no bar to his right of recovery. The contract was *contra bonos mores*, and void. (Pearce v. Brooks, L. R., 1 Exchequer, 213; Benjamin on Sales, 384, 404, 415; Girardy v. Richardson, 1 Esp. R. 13; Story's Eq. Jur., § 298, note 3.)

It was against public policy. (Paschal's Digest, articles 2027–2029; Story on Contracts, §§ 545–6; Cannon v. Bryce, 3 B. & Ald., 179; Benjamin on Sales, 182; Chitty on Contracts, 8 Am. 20, 598, and note 22. 3 Pick. Mass., 26–30.)

VI. Brown was not charged with the debt by appellee's pleadings, and the verdict of the jury granted a relief not asked in finding generally for plaintiff, without specifying in what way the respective defendants should respond. It was too vague and uncertain, and cannot be explained by the record. It should have been set aside, or a new trial granted. The court could not make it the basis of a legal judgment. (Claiborne v. Tanner, 18 Texas, 78; Jackson v. The State, 21 Texas, 676; Raines v. Calloway, 27 Texas, 685; Smith v. Jackson, 8 Texas, 424; Mays v. Lewis, 4 Texas, 38; Hawkins v. Lee, 22 Texas, 548; 24 Id., 202; 1 Id., 57; 16 Id., 23.)

VII. The judgment of the court is not warranted by, and does not pursue the verdict of the jury. (See cases referred to in § 6 : 18 Texas, 78; 21 Id., 675; 27 Id., 685; 22 Id., 548; 8 Id., 119; 13 Id., 333.)

VIII. The court erred in directing, that " defendants, or either of them," should be responsible for the judgment, out of their general estate, in case the house was not surrendered to the sheriff; and in permitting the purchaser to have thirty days to remove the house. Such conditions in a judgment are unprecedented and anomalous; warranted by no law, custom or authority.

N. B. It is claimed by appellee's brief that *non est factum* is the only proper plea in a case like this (see division 2 *supra*), and that we could have proved our allegations of fraud and a different contract under that plea. Most of the cases require fraud of every character to be set up specially. None of them go further in a contrary direction than to say, that fraud in the execution of the instrument (at the very time of execution) can be shown under the plea of *non est factum*; and they all hold that fraud preceding the execution cannot be shown under that plea. In the case at bar one plea alleges combination and fraud by and between appellee and one supposed attorney long before the execution of the

instrument.   This we could not have proven under *non est factum*.   (6 Munford's Rep., 366, and cases there cited ; Edwards v. Brown, 1 Texas, 196.)

*Ballinger, Jack & Mott*, for the appellee.

WALKER, J.—This action was brought in the Galveston County Court.   Honey, the plaintiff below, sued upon a written contract with Bishop, the defendant.   It appears from the contract that Honey undertook to build a house for Bishop.   She agreed to pay him five hundred dollars on the third day of November, 1867, and a like sum monthly until the payment amounted to $4500. The contract was recorded in the clerk's office of the county.   The mechanics' lien was provided for in the contract between the parties.

It appears that the lot on which the house was to be built belonged to John Brown, but his co-appellant, Mary Bishop, held a lease over it.   In answering the plaintiff's action, Bishop, after general demurrer and denial, plead her coverture specially, and further that there was fraud practiced upon her by her own attorney, in substituting the contract sued on for a prior contract between the parties.   She averred a failure on the part of the plaintiff to perform his contract, and plead in reconvention that she had paid the plaintiff five hundred dollars in advance, which she prayed might be returned to her.   To these pleadings the plaintiff excepted.

By agreement of parties the action was consolidated with two other actions growing out of the same contract, and was transferred to the district court for trial.

The plaintiff subsequently filed an amended petition, in which he alleged that he had performed eight-ninths of the work, and furnished a corresponding amount of material for the house ; that he had been compelled to abandon the work for the reason that the defendant had not paid for it under the contract.   He claimed

four thousand dollars for his work and material, and prayed for a decree foreclosing his lien.

To the amended petition the defendant demurred, and set up substantially the allegations contained in her answer to the original petition. The plaintiff again excepted to the plea of coverture, and to the plea of fraud and denial of the contract, also denying the coverture.

On the twenty-fifth day of May, 1869, the plaintiff below filed a petition making John Brown a defendant to the action, averring that in the previous month of April, and during the pendency of the suit, Brown had removed the house from lot No. 1, block No. 27, in the city of Galveston, to another lot belonging to him, without the consent or authority of the plaintiff; that the house was worth $4000, and was subject to the lien for $4500. We quote from the appellant's brief as follows:

"Brown answered twenty-eighth of June, 1869, by general demurrer and special exception, that the petition alleged no property in Bishop to the lot sought to be sold. Also, by pleas, that the lot was his; that the house had been put there without his consent; that it was a nuisance, injured his property, yielded no revenue, was badly built, and worthless; that he took it in consideration of debt due him by Bishop, and moved it off the lot to make it useful to him, at a round expense of $3100, which he prayed might be allowed him from the proceeds of sale, if the house was sold. Appellee thereupon amended by alleging that Bishop held the property under lease from Brown, paid rents promptly, and that Brown moved the house to defeat his lien. *Brown* is notified to produce the lease. Appellants filed joint amendment thirtieth of December, 1869, pleading in bar of the action, that the house was knowingly built by appellee for a house of public prostitution, and he should not be, therefore, allowed to recover for his work."

Having thus presented the issues made by the pleadings, we

proceed to examine the grounds upon which the appellants seek a reversal of the judgment.

The plea of coverture is one in which the defendant Bishop denies her liability to be sued as a *feme sole*. Is this plea, then, intended to defeat the action or the writ? It does not deny the cause of action, and therefore could not defeat it; it must, then, go to the writ and be treated as a plea in abatement, and as such it should have been sworn to under our statute; and this not having been done, the plea should have been stricken out on demurrer. The same may be said of the answer setting up fraud and former contract; however ingeniously plead, this matter amounted to no more nor less than the plea of *non est factum* to the contract sued on, and should have been sworn to.

That defense which seeks to exonerate the appellant Bishop from liability on the contract, upon the ground that she was building a house for the purpose of plying her vocation therein as a prostitute, and that the appellee knew this to be the design of the house, amounts to little less than absurdity.

Were we to follow the laborious and painstaking example of counsel for appellee, in hunting up and citing authorities, we fear we might be charged with compiling a book, rather than deciding the case.

This question has arisen in so many forms and shapes that it does appear an unnecessary labor to refer to authorities at this late day; but out of compliment to the learned counsel we will cite a few of the authorities from his brief: "Mere knowledge by the vendor of goods, of the illegal purpose for which they are to be used, is no defense against an action brought to recover their price." (Gaylord v. Soragen, 32 Vermont, 110.) "A clerk in the office of a dealer in lottery tickets in the State of Indiana, where lotteries are prohibited by law, can recover his salary." (Riggs v. Adams, 12 Indiana, 199.) "The vendor of billiard tables can recover the price of such tables, although used for

gambling purposes." (Beckel v. Sheets, 24 Indiana, 1; Bowry v. Bennett, 1 Campbell, N. P. R., 348; Williamson v. Watts, Id., 553; Loyd v. Johnson, 1 B. & P., 340.) Mr. Chitty says: "An action for clothes sold to a prostitute, or for washing her apparel, cannot be defeated merely by showing that the plaintiff was aware of the defendant's situation, although from the nature of the articles the plaintiff might have known the object and purpose for which they were intended." (Chitty on Contracts, 735 *et seq.*)

If the plaintiff is in any way the gainer by, or the partner in an illegal contract, one which is *contra bonos mores*, he cannot recover upon such contract; he cannot recover upon it if it be shown that he is *particeps criminis*.

But all houses are not built for the purpose of prostitution, nor are all billiard tables to be used for gambling purposes; and to defeat an action by such a defense as is made in this case, it must be shown that the plaintiff is himself directly connected in the criminal or illegal act.

In the case at bar the house was not to be paid for out of the proceeds of an illegal vocation. It was to be paid for as the work progressed upon it.

Perhaps there are no authorities bearing more directly upon this question than that of Armfield v. Tait, 7 Iredell, law, 260, and Mills v. Johnson, 23 Texas, 308.

It is urged that the appellant, Brown, is not fairly treated in the decree of the district court, but we fail to see any good ground of complaint in him. He had leased the lot to Mary Bishop; she, by her contract with Honey, had procured a house to be built upon it, worth $4500 when completed; eight-ninths of the work had been done, and material furnished, and now, pending suit between Honey and Bishop, Brown took possession of the house and converted it to his own use. He certainly knew, if Honey gained his case, this house must be subjected to the payment of his debt.

Whatever he did, he did *lis pendens*, and he must answer to Honey for any damages he has sustained thereby.

We think the judgment and decree of the district court are in all respects just and equitable, and therefore affirmed.

Affirmed.