PIONEER MUTUAL COMPENSATION COMPANY V. J. A. DIAZ.

No. 8175. Decided January 26, 1944.
(177 S. W., 2d Series, 202.)

*Joseph G. Bennis,* of El Paso, for petitioner.

On the proposition that the truck did not belong to Diaz and was being used for a unlawful purpose: Home Ins. Co. v. Lake Dallas Gin Co., 127 Texas 479, 93 S. W. (2d) 388; Texas State Mutual Fire Ins. Co. v. Richbourg, 257 S. W. 1089; 6 Couch Cyc. of Ins. Law, Sec. 1296.

As to the effect that the argument of counsel might have on the answer of the jury: McFaddin v. Hebert, 118 Texas 314, 15 S. W. (2d) 213; Employers Casualty Co. v. Scheffler, 20 S. W. (2d) 833; Clements v. Wright, 47 S. W. (2d) 652.

On the theory that the truck was being used for a purpose not contemplated, and under the public policy of the State there could be no recovery on such policy. Morris v. Firemen's Ins. Co., 121 Kan. 484, 247 Pac. 852; 10 Tex. Jur. 185, sec. 106; 5 Couch Cyc. of Ins. Law, sec. 1175, note 3.

*R. P. Langford* and *J. H. McBroom,* both of El Paso, for respondent.

MR. JUDGE HICKMAN, of the Commission of Appeals, delivered the opinion for the Court.

In the trial court the respondent, J. A. Diaz, was awarded judgment against the petitioner, Pioneer Mutual Compensation Company, on a policy of public liability insurance issued by the Company to Diaz as the sole owner of a delivery truck and the judgment was affirmed by the Court of Civil Appeals, 178 S. W. (2d) 121.

An employee of respondent while driving the truck covered by the policy struck and killed a child. The parents of the child instituted suit against respondent and his driver for damages on account of the child's death. Petitioner undertook the defense of the suit under an agreement whereby it was stipulated that it did not waive any of its defenses against liability on the policy. That suit was compromised by the payment to the parents by respondent of $1,812.40. Both parties hereto consented to the compromise, and it is agreed that, if petitioner is liable on the policy, the amount paid by respondent is the measure of that liability. This suit was instituted by respondent for the recovery of that amount and resulted, as above indicated, in a judgment in his favor.

Petitoner's home office is in Albuquerque, New Mexico. It did business in El Paso through its agent, Fletcher Belk, Jr.,

who countersigned the policy in suit. While the nature of the contract between Belk and the Company was not established upon the trial and is not of controlling importance, it is inferable that Belk was a local recording agent under the provisions of Article 5058, Vernon's Civil Statutes, since the Company is a foreign corporation and Belk countersigned the policy. On all relevant dates Diaz operated the Barrel House Liquor Store under a power of attorney from his brother, the owner thereof. He had no permit to operate a delivery truck and conceived the law to be that he could not lawfully deliver products from the liquor store to its customers. Adrian Garcia operated taxi-cabs in El Paso and had a permit under which he could lawfully deliver liquor from the liquor store to its customers. With the increase in the business of his taxi-cabs it became more and more difficult to have deliveries made in that manner and, for the purpose of having such deliveries promptly made, Diaz purchased for cash the truck here involved and, through arrangement with Garcia, had the title thereto placed in Garcia's name and obligated himself to pay him a percentage of the total business done by the truck for the use of his permit. Garcia owned no interest in the truck and had nothing whatever to do with its operation. It was operated by Diaz through his paid employees. On the advice of his attorney Diaz had Garcia execute a demand note to him in the sum of $800.00, the amount which Diaz paid for the truck, and secured the note by a chattel mortgage on the truck. This was done to protect Diaz against any possible transfer by Garcia. Shortly before the issuance of the policy here involved Diaz notified Belk that he wanted a public liability policy written under his and Garcia's name. Diaz explained to Belk that Garcia had a carrier's permit; that according to the law he, Diaz, could not deliver his own goods if the truck was registered in his name. Two different companies represented by Belk declined the risk because it was written in the two names and thereafter Diaz instructed Belk to have it written in his name alone. Thereupon Belk wrote to the petitioner requesting that it issue a policy to Diaz covering certain specified risks and in reply to the request the policy in suit was issued.

■ We have concluded that the Court of Civil Appeals correctly decided each question presented, but in view of arguments advanced here by petitioner it is deemed advisable to write further on a few of the questions. The argument is pressed that petitioner should be relieved of liability on the ground of public policy. The test of whether a demand connected with an illegal transaction may be enforced at law is whether or not a case may be established without reliance on the illegal transaction.

Stone v. Robinson (Com. App.) 234 S. W. 1094; 17 C. J. S., Contracts, Sec. 276. In ·Labbe v. Corbett, 69 Texas 503, 506, 6 S. W. 808, 810, Justice Stayton observed:

"* * * The tendency of the decisions in this state has been towards a denial of the invalidity of a contract, on the mere ground that one party to it may have known of an intention on the part of the other to use the subject-matter of the contract for an unlawful purpose. McKinney v. Andrews, 41 Texas 366; Bishop v. Koney, 34 Texas 252. Be the rule as it may, the mere knowledge of the appellee that the appellant may have intended to drive the sheep on or over public roads would not invalidate the contract when the purpose was to give and limit the uses to which the sheep might be applied, and not to regulate the incidental powers the appellant might use in controlling and caring for them, with a view to make the lawful uses most profitable to himself."

Had the petitioner obligated itself to indemnify respondent against the consequences of the violation of law, the contract would clearly have been illegal and void as against public policy. But the obligation of this policy does not rest upon that basis. The accident resulting in the death of the child was the foundation of the civil liability of Diaz to the parents of such child and likewise the foundation of the liability of petitioner on the policy of indemnity. The obligation of petitioner was not to indemnify respondent for damages resulting because of the violation by him of any law, but was to indemnify him from civil liability on account of the operation of the truck. We have concluded that the Court of Civil Appeals correctly held that petitioner should not be relieved of liability on the ground of public policy.

■ Errors are assigned to the rulings of the court below on questions of alleged improper argument of counsel to the jury. The first special issue in the Court's charge called upon the jury to answer whether or not respondent Diaz was the owner of the truck covered by the policy at the time of its issuance and acceptance. That issue was answered in the affirmative. In his address to the jury one of respondent's attorneys used this language: "An answer to Question 1 is an answer to the whole law suit." The contention is made that by this language the attorney informed the jury of the effect of its answer to the issue. It will be noted that the language does not inform the jury as to how the issue should be answered, but merely states that the answer, whatever it may be, will be controlling. It may be, as insisted by respondent, that, upon that ground the assignment should be overruled. But however that may be, we

base our holding on this question upon another ground. After the jury had retired to consider the case it addressed to the Court the following communication: "Can a man be the owner of property although the title is in the name of another?" In answer to the inquiry the court, in writing, instructed the jury as follows: "In connection therewith you are instructed that the term 'owner' as used in the Court's Main Charge includes any person claiming title to, or having a right to operate pursuant to a lien on, a motor vehicle after the first sale as herein defined."

Under that definition there was no issue of fact raised by the evidence as to the ownership by Diaz of the truck, for he certainly claimed it. The question, therefore, of whether the attorney improperly informed the jury of the effect of its answer becomes immaterial for no other answer than the one returned could have been made.

■ But is claimed that the Court erred in overruling the exceptions timely filed by petitioner to that definition. The exceptions are long and will not be set out in full here, but the effect thereof was to complain of the definition because, under the Certificate of Title Act, (Art. 1436, Vernon's Texas Penal Code) from which the definition was copied, a certificate of title is the primary and controlling evidence of title and ownership. In effect the objection was not that the definition was too broad when applied to a case like this, because it included persons merely claiming the title to the vehicle and persons having a right to operate same pursuant to a lien, but that under the above statute Diaz could not be the owner, because the truck was registered in the name of Garcia. We approve the holding of the Court of Civil Appeals that the statute should not be given that construction. The registration in Garcia's name raised the presumption of ownership. Such presumption, however, is not evidence, but is "an administrative presumption" which vanishes when positive evidence to the contrary is introduced. Empire Gas & Fuel Co. v. Muegge, 135 Texas 520, 143 S. W. (2d) 763.

■ Another of respondent's attorneys stated in his address to the jury that "The contract will stand unless you find fraud." The contention that this constituted error is answered by the fact that the jury was not called upon to "find fraud." The word "Fraud" was not used in the charge and it cannot be concluded that, by this argument, the jury was probably influenced in answering any other issue submitted. Further, the language does not disclose to what contract the statement was referable.

There is no showing as to whether it was the contract of insurance in suit or the contract between Diaz and Garcia.

We do not sustain any assignment of error in the application, and it is accordingly ordered that the judgments of the trial court and the Court of Civil Appeals both be affirmed.

Opinion adopted by the Supreme Court January 26, 1944.