**TRUCK INSURANCE EXCHANGE, Appellant,**

v.

**H. H. SCHUENEMANN, Administrator, et al.**

No. 14337.

Court of Civil Appeals of Texas.

San Antonio.

May 12, 1965.

Rehearing Denied June 2, 1965.

Kleberg, Mobley, Lockett & Weil, Corpus Christi, Fred V. Klingemann, Karnes City, for appellant.

Roy D. Roberts, Jr., Kenedy, Reese D. Wade, Beeville, for appellees.

CADENA, Justice.

This Court's opinion of January 20, 1965, is withdrawn and the following substituted therefor:

This is an action by appellant, Truck Insurance Exchange, against appellees, H. H. Schuenemann, administrator of the estate of Rauel Roberto Diaz, deceased, Luis R. Martinez, and Ygnacio Martinez and wife, Ramona, for declaratory judgment to determine the obligations of appellant under a liability insurance policy issued by it to Rauel Roberto Diaz.

The controversy grew out of a collision on July 15, 1962, in Karnes County, involving a 1953 Ford driven by Rauel Diaz and an automobile driven by appellee Luis R. Martinez. As a result of the collision, Rauel Diaz was killed, as was Sixto Martinez, minor son of appellees Ygnacio and Ramona Martinez, and appellee Luis R. Martinez suffered bodily injury. Luis Martinez, Ygnacio Martinez and Ramona Martinez filed suit against appellee Schuenemann, administrator of the estate of Rauel

Diaz, who called on appellant to defend him and the estate against the claim. Appellant then filed this suit, seeking a declaration that it was not obligated to defend or indemnify the estate.

Appellant had issued to Rauel Diaz a liability insurance policy of the type sometimes known as a "Non-Owner Policy"; that is, the policy did not apply to any automobile owned by the insured.

The parties stipulated as follows: (1) The 1953 Ford being driven by Rauel Diaz at the time of the collision was purchased by Rauel's father, Marcos Diaz, in 1957. The title certificate issued at that time shows the father Marcos Diaz, as owner. (2) In May, 1959, Marcos Diaz and his wife, Aurelia, gave the custody and control of the car to their son, Rauel, as a graduation present, intending "at that time that the said Rauel Diaz would immediately have the title to said automobile." (3) Thereafter, Rauel Diaz had the custody, possession and control of the automobile at all times until July 15, 1962, the date of the collision and Rauel's death. (4) The title certificate to the vehicle was never transferred to Rauel, and no application for a new title in the name of Rauel Diaz was ever made by anyone, so that the provisions of the Texas Certificate of Title Act, Art. 1436—1, Vernon's Ann. Penal Code, were never complied with in connection with the transfer of the vehicle.

Both parents of Rauel Diaz testified that, after May, 1959, they would ask their son's permission whenever they wanted to use the automobile, and that after his graduation Rauel paid all expenses incident to the operation, maintenance and repair of the automobile.

The parties further are in agreement that if the 1953 Ford was owned by Rauel Diaz at the time of the collision, appellant has no obligations under the policy, but that appellant has an obligation to defend and indemnify if, on the date of the collision, the automobile was not owned by Rauel.

The trial court held that, because of the failure to comply with the Certificate of Title Act, the attempted gift of the automobile to Rauel Diaz by his parents was void, so that Rauel never was the owner of the vehicle. Judgment was accordingly entered declaring that appellant is under obligation to defend and indemnify the estate of Rauel Diaz.

It is apparent from the stipulations and the evidence that Mr. and Mrs. Marcos Diaz, intending to make a present gift of the automobile to their son, turned its possession and control over to him in May of 1959, and that thereafter, until July 15, 1962, the date of the collision, Rauel Diaz at all times had the exclusive and complete control of the vehicle. All requirements for a valid present gift of a chattel were satisfied, and there would be no question as to the validity and effectiveness of the gift if its subject matter had been a chattel other than a motor vehicle. Therefore, the only question to be decided concerns the effect of the failure to comply with the provisions of the Certificate of Title Act, Art. 1436—1, supra.

Sec. 33 of the Certificate of Title Act provides that no motor vehicle shall be disposed of at subsequent sale unless the owner designated in the certificate of title shall transfer the certificate before a Notary Public on a prescribed form, which form shall include an affidavit that the signer is the owner of the vehicle and that the vehicle is free of liens except as shown on the certificate of title. This section expressly recites that "no title to any motor vehicle shall pass or vest until such transfer be so executed."

Sec. 51 makes it unlawful for any person to sell a motor vehicle without having in his possession the proper certificate of title covering such vehicle.

Sec. 52 makes it unlawful to acquire any title other than a lien in a motor

vehicle without demanding of the proposed seller the registration receipt and certificate of title covering such vehicle, which shall, upon consummation of the purchase, be transferred upon such form as may be prescribed by the State Highway Department.

Sec. 53 provides that all sales "made in violation of this Act shall be void and no title shall pass until the provisions of this Act have been complied with."

In Elder Chevrolet Co. v. Bailey County Motor Co., Tex.Civ.App., 151 S.W.2d 938, no wr. hist., the El Paso Court, relying in part on 7 Blashfield, Cyclopedia of Automobile Law and Practice (Perm.Ed., 1950), §§ 4261, 4262, in support of its statement that "[t]he weight of authority in other states having laws basically the same as our Certificate of Title Act, is that a sale not conforming to the law is void and does not pass title," concluded that "[t]o hold that title did pass would be in the face of a statutory provision that is too plain to require construction."

■ However, it is clear that subsequent decisions in this State establish the rule that failure to comply with the statutory requirements relating to the transfer of a motor vehicle does not render the transfer void as between the parties. In Pioneer Mutual Compensation Co. v. Diaz, 178 S.W. 2d 121, aff. 142 Tex. 184, 177 S.W.2d 202, Diaz purchased a truck for cash but, for reasons of his own, had the vehicle registered in the name of his employee, Garcia. He purchased a liability insurance policy in which it was recited that he was the owner of the vehicle. After the truck had been involved in an accident, the insurer denied liability on the ground that the insured, Diaz, was not the owner, since the certificate of title listed Garcia as owner. The El Paso Court held that Diaz was the owner and that the insurer was liable on the policy. The following portions of the opinion are pertinent:

"The Certificate of Title Act * * * declares the legislative purpose and in-

tent, Sec. 1, to be to lessen and prevent theft, the importation and traffic in stolen motor vehicles, and to enforce a disclosure of all liens and encumbrances. The act does not prohibit the registration of a motor vehicle in the name of one other than the true owner, nor render the title invalid or prohibit the passing of title in such event. It merely provides, after the first sale the title shall pass and vest only by a transfer of the certificate of title, Sec. 33, by the owner designated in the certificate of title. 'Owner designated,' indicates an owner may be different from the true owner."

In affirming, the Commission of Appeals, in an opinion adopted by the Supreme Court, said, "We have concluded that the Court of Civil Appeals correctly decided each question presented, * * *." Pioneer Mutual Compensation Co. v. Diaz, 142 Tex. 184, 177 S.W.2d 202, 203. In answer to the contention by the insurer that the trial court had erred in instructing the jury that the term "owner," as used in the charge, "includes any person claiming title to or having the right to operate pursuant to a lien on, a motor vehicle after the first sale as herein defined," Judge Hickman said:

"But it is claimed that the Court erred in overruling the exceptions timely filed by petitioner to that definition. The exceptions are long * * *, but the effect thereof was to complain of the definition because, under the Certificate of Title Act * * * a certificate of title is the primary and controlling evidence of title and ownership. In effect, the objection was * * * that under the above statute Diaz could not be the owner, because the truck was registered in the name of Garcia. We approve the holding of the Court of Civil Appeals that the statute should not be given that construction. The registration in Garcia's name raised the presumption of ownership. Such presumption, however, is not evidence, but is 'an administrative

presumption' which vanishes when positive evidence to the contrary is introduced." 177 S.W.2d at p. 204.

In Rush v. Smitherman, 294 S.W.2d 873, wr. ref., the Court rejected the theory that there could be no transfer of title to a motor vehicle without compliance with the provisions of the statute. After stating that the purpose of the Act was to prevent theft of motor vehicles, the importation into this State of, and traffic in, stolen motor vehicles, and the sale of encumbered motor vehicles without the enforced disclosure to the purchaser of any and all liens, Judge Pope said:

> "Adhering to the declared purposes announced by Section 1 of the law it-self, and even in the face of the express statement of Sections 33 and 53, that all sales without the transfer of the certificate shall be void, many cases have recognized the validity of sales between the parties, though no transfer was made. * * * So, despite the failure to transfer the certificate and the Act's declaration that the non-transfer will render the sale void, as between the parties and when the purposes of the Act are not defeated, the sale is valid." 294 S.W.2d at p. 877.

Appellees rely strongly on Hoskins v. Carpenter, Tex.Civ.App., 201 S.W.2d 606, wr. ref., n. r. e. In that case Mrs. Hoardley delivered the title certificate and the keys to the motor vehicle to Betty Hoskins, but the assignment part of the certificate was not sworn to as required by Sec. 33. The El Paso Court, in holding that title did not pass, said:

> "The attempted transfer of this automobile was a 'subsequent sale' of the automobile in question, within the meaning of Section 8, Certificate of Title Act, * * *. Section 33 of the (Certificate of Title Act) * * * provides in substance that no title passes unless the certificate is transferred before a Notary Public. This transfer was not before a Notary Public, hence it is thought elementary that title to the automobile did not pass." 201 S.W.2d at p. 608.

However, the above language was unnecessary to the disposition of the case. The jury found that at the time Mrs. Hoardley delivered the keys and certificate of title she did not intend to vest title in the car to the transferee. In the absence of the required donative intent, the transaction could not amount to a gift.

The rule that failure to comply with the requirements of the Act does not prevent passage of title as between the parties has been applied to cases involving gifts. In Wise v. Cain, Tex.Civ.App., 212 S.W.2d 880, wr. ref., n. r. e., Wise told Mrs. Cain that he was making a gift of the car to her. There was a transfer of the certificate of title, but Wise did not appear before a Notary Public as required by Sec. 33 of the Act. Despite the express language of Sec. 33 that no title shall pass unless the required transfer is executed before a Notary Public, the Austin Court held that there was an executed and effective gift of the vehicle by Wise to Mrs. Cain.

In Bishop v. Bishop, 359 S.W.2d 869 (Tex.1962), the dispute involved ownership of a Cadillac as between the parties to a divorce action. The statement of the evidence by the Supreme Court shows that when the car was purchased the husband told the wife, "I am giving you the car. I want you to have this Cadillac. *I am keeping it in my name* because I am making the payments on it, and it should be in my name for this reason." (Emphasis added). Although the evidence thus clearly showed that there was no transfer of the certificate of title, which showed the husband as owner, the Supreme Court held that the evidence showed a completed gift of the car to the wife.

This case does not involve a dispute between rival claimants of an interest in the automobile in question. Under such

circumstances, the administrative presumption of ownership arising from the recitals in the certificate of title may be overcome by evidence showing that ownership of the vehicle was, in fact, in Rauel Diaz, the insured. The evidence and stipulations establish that, in fact, Rauel Diaz was the owner of the 1953 Ford. Since all parties concede that in such event the appellant insurer is under no obligation to defend or indemnify the estate of the insured, it follows that the trial court erred in holding that there was coverage under the "non-owner" policy.

Accordingly, appellant's motion for rehearing is granted. The judgment of the trial court is reversed and judgment here rendered that appellant, Truck Insurance Exchange, is under no obligation to defend or indemnify appellee H. H. Schuenemann, administrator of the estate of Rauel Roberto Diaz, deceased, or the estate of such decedent, against the claims filed by appellees Luis R. Martinez, Ygnacio Martinez and Ramona Martinez.

MURRAY, Chief Justice (concurring).

I concur in the result arrived at by the majority upon appellant's motion for a rehearing. While I believe that it was the intention of the Legislature to render parol gifts of motor vehicles void, or at least voidable, Art. 1436-1, §§ 33, 44, 46, 51, 52 and 53, Vernon's Ann.Penal Code, yet under certain conditions such a parol gift may in equity be declared valid, and the facts here show this parol gift to be an exception to the general rule. No one with a justiciable interest in this gift is endeavoring to set it aside. Furthermore, Rauel Roberto Diaz, deceased, was in open, exclusive, adverse possession of this automobile under a parol gift for more than two years before his death and thus established a title by limitation. Art. 5526, §§ 2 and 3, Vernon's Ann.Civ.Stats.

The decisions dealing with parol gifts of land should be helpful here. Statutes requiring that the transfer of title to land must be in writing, acknowledged, etc., Art. 1288 and Art. 3995, § 4 Vernon's Ann.Civ. Stats., do not use language nearly as strong as that used in the Certificate of Title Act relating to motor vehicles, yet the Courts hold that a parol gift of land is void with the exception that when a present gift is shown and possession taken and held under that gift by the donee, with the consent of the donor, and permanent and valuable improvements made upon the land by the donee in reliance on such gift, with the consent or knowledge of the donor, such parol gift is valid. Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216; Davis v. Douglas, Com.App., 15 S. W.2d 232; Harper v. Harper, Tex.Civ. App., 274 S.W.2d 930; Henderson v. Henderson, Tex.Civ.App., 236 S.W.2d 154. Of course, if the donee has been in possession of the land for a sufficient length of time and under such circumstances as to establish title by limitation, the donee would have title independent of the parol gift.

I believe the parol gift of the automobile herein was effective due to the circumstances above pointed out, but I believe the general rule to be that parol gifts of automobiles made in violation of the Certificate of Title Act, Art. 1436-1, supra, are at least voidable. The language of the Certificate of Title Act is too plain to permit any other construction.

In my opinion the Supreme Court has not yet said that the title to motor vehicles can be passed by parol gift, the same as any other chattel, and in total disregard of the Certificate of Title Act, Art. 1436-1, supra.