**STRICKLAND TRANSPORTATION CO.,**
**Inc., Appellant,**

v.

**Hawkins INGRAM et al., Appellees.**

**No. 7731.**

Court of Civil Appeals of Texas.

Texarkana.

April 26, 1966.

Rehearing Denied May 24, 1966.

Neal A. Hawthorn, Kenley & Boyland, Longview, for appellant.

Fred Whitaker, Carthage, for appellee.

CHADICK, Chief Justice.

This is a venue case. At the conclusion of a plea of privilege hearing the trial judge ruled that Subdivision 9a, Article 1995, Vernon's Ann.Tex.Civ.St., authorized trial in Panola County of this, an automobile collision case. The trial court judgment overruling the plea of privilege is affirmed.

One of the venue facts, and the only one at issue in this appeal, is whether or not there is evidence that the driver of the truck figuring in the collision was at the time of the occurrence a servant, agent or representative of appellant, Strickland Transportation Company, Inc., and acting within the scope of his employment. For proof of this vital element of venue the ap-

pellees rely upon a presumption of such facts arising when ownership of the vehicle was proven to be in appellant, Strickland Transportation Company, Inc. The appellant's basic complaint is that there is no probative evidence that appellant owned the truck.

The evidence pertaining to this venue fact is brief. The quotation below from the testimony of Hawkins Ingram, one of the appellees, is all of the proof touching upon the fact. The statement of facts contains this, to-wit:

" * * *

"Q. You didn't see anything. Now then, did you know how many drivers there were in that truck?

A. No, sir.

Q. Did you later learn through the highway department, the Sheriff's Office, that there was one or two drivers?

A. Yes, sir.

Q. How many drivers were there?

A. Two.

* * *

Q. All right. Did you later know that the drivers were Claude A. Wolverton and H. B. Beavers?

A. Yes, sir.

Q. Did you later learn that the truck was owned by the defendant, Strickland Transport Company, Incorporated of Dallas, Texas?

A. Yes, sir.

Q. Did you receive any injuries from this accident?

A. Yes, sir.

Q. Were you dazed or knocked unconscious in any way at the time?

A. Yes, sir.

Q. Just tell the Court briefly now, we don't want to go into that, except just to show the injuries?

A. Well, at the time I was knocked almost unconscious, I wasn't aware of everything that went on around me, but I was transferred from the scene of the accident to the hospital, Panola General Hospital".

No objection was made to the admission of this testimony. The parties' briefs make it known that a misunderstanding caused counsel for appellant to be absent from the hearing when this testimony was adduced; but revision is not sought on that account.

Article 1436-1, § 4, Vernon's Ann.P.C. defines the owner of a motor vehicle for the purposes of the Certificate of Title Act; but the statutory definition is not a comprehensive pronouncement applicable under all circumstances. Pioneer Mut. Compensation Co. v. Diaz, 142 Tex. 184, 177 S.W.2d 202 (Comm.App. op. adpt). The owner of tangible personal property, such as a truck, is defined in 73 C.J.S. Property § 13, p. 181 in this language.

"The term 'owner' is a general term having a wide variety of meanings depending on the context and the circumstances in which it is used. Broadly, an 'owner' is one who has dominion over property which is the subject of ownership."

For the purposes of this common law tort action the owner of the truck may be satisfactorily defined as a person or entity claiming ownership and having possession or exercising control over it. See Pioneer Mutual Compensation Company v. Diaz, supra; Realty Trust Co. v. Craddock, 131 Tex. 88, 112 S.W.2d 440. Manifestations of ownership appear to be capable of perception by the senses of a witness, that is, many cases hold a witness may testify directly as to ownership. See Campbell v. Peacock (Tex.Civ.App.1915) 176 S.W. 774, no writ; Evidence, 20 Am.Jur. 644 § 772.

Perception of fact by the senses of the witness, that is, firsthand knowledge, is a fundamental qualification of testimonial competency. The origin and viability of this qualification is found in the law's requirement that the most reliable information underlie court decisions. 1 Texas Law of Evidence 578, § 793; McCormick on Evidence 19, § 10; Evidence, 20 Am.Juris. 634, § 765, and 97 C.J.S. Witnesses §§ 52 and 53. Of course there are exceptions to this general rule, as well established as the rule itself, but enumeration of such exceptions will serve no purpose at this point.

The intransitory verb "learn" used in Hawkins Ingram's testimony relative to ownership of the truck, according to the Century Dictionary and Encyclopedia, means "To acquire or receive knowledge, information or intelligence; * * *". This definition gives the word a twofold, and for the purpose of this inquiry, an ambiguous meaning. It means both to receive knowledge and to receive information; which might be through the senses in the first instance and a hearsay statement in the other. The effort here is to determine whether Hawkins Ingram's knowledge of the ownership of the truck was the result of facts perceptible to him, or is based on statements to him by persons in nowise connected with ownership. If his knowledge was acquired from facts perceptible to him, his testimony would have probative force, but if he was informed of the ownership by statements of third persons, his testimony is hearsay and of no probative value. Henry v. Phillips, 105 Tex. 459, 151 S.W. 533 (1912); "Incompetent Evidence Admitted Without Objection" (Tom McLeroy), 21 Texas Law Review 778.

The qualifying factor in Hawkins Ingram's testimony that he *later* learned, that is, learned after the collision occurred, that Strickland Transportation Company, Inc., owned the truck at the time of collision confines the opportunity he had of gaining first hand knowledge of ownership to a time subsequent to collision. But this does not necessarily exclude acquisition of such knowledge. A witness may testify in accordance with his knowledge at the time his testimony is offered; he is not restricted to his knowledge at the time the event occurred. As an illustration in Cleveland Terminal & Valley R. R. Co. v. Marsh, 63 Ohio St. 236, 58 N.E. 821, 52 L.R.A. 142, a witness testified that a trainman obtained an object from the station agent which the witness observed closely. The witness did not know what the object was at the time he observed the transaction. At the time of testifying the witness knew it to be a signal torpedo by knowledge he obtained subsequent to first observing it. It was held that the witness might testify to the fact as he knew it to be at the time he testified. See also 97 C.J.S. Witnesses § 52c, p. 441; 58 Am.J. 90, § 114.

Testimony of a witness is admissible and therefore must be assumed to be endowed with probative value, when it is possible under the record for the witness to have obtained personal knowledge of the facts related. The hearsay character of the testimony must affirmatively appear before it may be disregarded on appeal. Jackes-Evans Mfg. Co. v. Goss (Tex.Civ. App.1923) 254 S.W. 320, no writ; Ft. Worth & Denver City Ry. Co. v. Ryan (Tex.Civ.App.1925), 271 S.W. 397, no writ; Heintz v. O'Donnell (1897), 17 Tex.Civ. App. 21, 42 S.W. 797, no writ. On the face of the record Hawkins Ingram's testimony is not shown to be hearsay and as the record presents it he could have had first hand knowledge that Strickland Transportation Company, Inc., owned the truck at the time of the collision. This conclusion is supported by Missouri Pac. Ry. Co. v. Sherwood (Sp.Ct.1892) 84 Tex. 125, 19 S.W. 455, 17 L.R.A. 643, where it is said:

"The witness O'Neal testified that, at the time of the loss of the cotton in

question, he was the general manager of Martin, Wise & Fitzhugh, located at Paris; that the 473 bales of cotton were destroyed by fire on November 14, 1887, at Greenville, and, as far as witness knows, were not delivered; that he knows this cotton was destroyed by fire at Greenville, Tex., November 14, 1887, of his own knowledge, as far as it is possible for him to know it without actually seeing it burn. Defendant objected to this testimony because it appeared that on November 14, 1887, witness lived at Paris, and was not at Greenville, and that his evidence as to the burning of the cotton is hearsay. We are unable to say that the knowledge of the witness, to the existence of which he swears, was founded on pure hearsay. There are conditions in which one can acquire knowledge without seeing. We cannot adjudge that the action of the court in admitting the evidence was erroneous. While it appears that the witness was at the time stated located in business at Paris, it does not appear that he was not at Greenville on November 14, 1887; and, while he did not see the fire which consumed the cotton, his statement may have been based on information derived from a source which would bind defendant. The cross-examiner did not sufficiently probe the sources of the witness' knowledge to justify us in holding that it was founded entirely on hearsay, rendering his testimony inadmissible."

The appellant's points of error are overruled.

The author of "Evidence", 24 T.J. 61, § 561 makes this statement:

"It is frequently difficult to determine whether proffered evidence is or is not hearsay. No problem arises where the hearsay nature of the evidence offered is clearly apparent on the face of the testimony, as where the witness testifies that he had 'heard', 'learned', 'been told', or been 'informed' of a certain matter."

There are numerous cases cited to support this conclusion, a principal one is that of Lightfoot v. State, 123 Tex.Cr.R. 176, 58 S.W.2d 81. No effort will be made to reconcile these several cases with the result reached here, but for the reasons discussed this court has concluded that the evidence in question is not necessarily hearsay and has probative force. The use of the word *learn* by a witness is not invariably a harbinger of hearsay. The judgment of the trial court is affirmed.