**CIMARRON INSURANCE CO., Inc.,
Appellant,**

v.

**John W. PRICE et al., Appellees.**

**No. 11457.**

Court of Civil Appeals of Texas.

Austin.

Nov. 30, 1966.

Rehearing Denied Dec. 21, 1966.

L. W. Anderson, Dallas, for appellant.

Harvey C. Ford, Carrington, Johnson & Stephens, Ronald L. Neill, Dallas, for appellees.

HUGHES, Justice.

Cimarron Insurance Co., Inc., appellant, sued John W. Price, Gary M. Holt, Sam Jaffa and wife, Geneva B. Jaffa, for a declaratory judgment respecting its rights and liabilities under a policy of automobile liability insurance issued by it to John W. Price as owner of a 1958 Plymouth 4-door Savoy sedan automobile.

It was alleged that Gary M. Holt was driving this Plymouth on April 16, 1964, when a collision occurred between it and an automobile then being operated by Geneva B. Jaffa allegedly resulting in personal injuries to Mrs. Jaffa and damages to the automobile owned by her and her husband.

The substance of the appellant's suit is contained in these allegations taken from its amended petition:

"That although the Defendant, John W. Price, orally represented to the Plaintiff, Cimarron Insurance Co., Inc., and its agent that he was the sole owner of said 1958 Plymouth 4-door Sedan, and was listed in the declarations as the sole owner, subject to the lien of the Wynnewood State Bank of Dallas, Texas, nevertheless the same was not true and was a falsehood. That the true facts in connection therewith were that the automobile was bought for the use and benefit of the Defendant, Gary M. Holt, and was used by him most of the time and was supposed to have been registered in his name and that the said Defendant, Gary M. Holt, made monthly payments to the said Defendant, John W. Price, for the purchase price of said automobile, and in turn, the said John W. Price then made said payments to the Wynnewood State Bank of Dallas, Texas, so in truth and in fact, the said Gary M. Holt was the real owner of said automobile, even though it had not been registered in his name at the time of the accident, as had been orally promised by the said Defendant, John W. Price, to Gary M. Holt. That had the Plaintiff known that the Defendant, Gary M. Holt, a seventeen (17) year old minor was the owner and operator of said automobile, it would not have written said policy. That accordingly, the sole ownership clause of the policy was completely violated, and the Plaintiff should be relieved of any liability in connection therewith."

These allegations were specially denied by appellees. The issue thus made was submitted to the jury trying the case in the form and with the answer shown below:

"Do you find from a preponderance of the evidence that at the time of the accident in question on April 16, 1964, that John W. Price was not the true owner of the 1958 Plymouth automobile in question?

In connection with your answer to this issue you are instructed that the fact that the certificate of title is issued to a person is not conclusive of ownership, but is merely evidentiary and to be considered along with other evidence in the case.

You are further instructed that by the term 'true owner' is meant one who has dominion of a thing which he has the right to enjoy and to do with as he pleases, even to spoil or destroy it, so far as the law permits, unless he is prevented by some agreement or covenant which restrains such right.

Answer 'He was' or 'He was not.'

Answer: *He was*"

Based on this verdict, judgment was entered denying appellant the declaratory judgment for which it prayed.

Appellant's first two points are jointly briefed. They assert that the trial court

erred in overruling its motion for judgment notwithstanding the verdict because there was no evidence to support the finding of the jury, above noted, and that such finding was against the greater weight and preponderance of the evidence, and that, as a matter of law, "a fraud and misrepresentation was made to appellant's agent that John W. Price was the owner of said automobile."

It is necessary that we make an extended statement of the evidence in order to reflect our decision in disposing of the first two points.

Mr. M. N. Killough, a local insurance agent for 40 years, acting as agent for appellant, issued a policy of automobile liability insurance to John W. Price covering a 1950 Ford automobile. There was an endorsement to that policy of insurance in November 1963 adding coverage of a 1958 Plymouth automobile. This is the car the ownership of which is in issue in this case.

On December 23, 1964, this contract of automobile liability insurance on both the Ford and Plymouth automobiles was renewed. At the time John W. Price applied for the policy on the Plymouth he explained to M. N. Killough that there was to be a mortgage on the Plymouth automobile in favor of the Wynnewood State Bank. Mr. Price further explained that a minor under the age of 25 years would be driving the automobile and that such minor, Gary M. Holt, would probably be driving it more than anyone else. An extra premium was paid because Gary Holt would be a driver. Mr. Price stated to Mr. Killough that he owned the automobile; that he had bought the car for Gary Michael Holt; that the car would be used by Gary for dates, going back and forth to the store, and whenever he thought he needed it.

Mr. Killough on direct examination testified that John W. Price had represented at the time he applied for the policy that he was the owner of the 1958 Plymouth. He further testified that he was advised that Gary M. Holt, a minor under the age of 25, would be driving the automobile. Mr. Killough stated that he asked Mr. Price the information necessary for writing the policy and that Mr. Price answered that he owned the car. After Mr. Killough got the information he thought necessary for issuing the policy he had no further conversation with Mr. Price concerning the ownership or anything else about the automobile.

Mr. Killough testified that he knew the bank had a lien on the Plymouth and that Mr. Price was responsible for paying the bank. Mr. Price, alone, executed the note and lien in favor of the bank and made all the payments credited to the note.

In a written statement signed by Mr. Killough a year before the trial Mr. Killough stated:

"Actually when Mr. Price reported the '58 Plymouth to be added to his policy I was not certain if he advised that he had bought the car or just who had bought it, but he did say that it (would) be used as a family car, although Mr. Holt would probably be using the car mostly."

This statement was admitted in evidence by the trial court for impeachment purposes. Mr. Killough testified that this part of his statement was incorrect.

It was agreed between John Price and Gary Holt before the Plymouth car was purchased that only when Gary Holt had fully reimbursed John Price for the cost of the car would it be transferred to him. It was further explained to Gary by Mr. Price that he could use the car but that any time Mr. Price decided Gary was abusing it he would take the keys and deny Gary the right to drive the car at all. It was further understood that if at any time Gary quit making payments on the car, then the car would continue to belong to Mr. Price, and until the car was completely paid for Mr. Price could do with it as he pleased. Gary Holt testified, "there was an agreement with us that it was his car until I paid or reimbursed him in full for it. He

had the right to deny or grant me permission to use the car. * * * If I quit making or reimbursing Mr. Price even though I lacked one payment it was understood that it would be his car."

Mr. H. N. Killough testified John W. Price represented to him when he wrote the policy that he was the owner of the 1958 Plymouth and had he known Mr. Holt, a seventeen (17) year old male, was the real owner of the 1958 Plymouth automobile he could not have written the policy and would have had to submit it to the insurance company for approval.

Mr. Gary Michael Holt called as an adverse witness, testified that he was seventeen (17) years old at the time the automobile was purchased. Mr. Holt testified that he had discussions with his brother-in-law, Mr. Price, to the effect that he was interested in buying a car and Mr. Price would have somebody looking for him to find one. That thereafter, they located this Plymouth car and he, Holt, drove the car home, and that they finally decided it was a good car for Holt to buy. He further testified that he thereafter paid the One Hundred Fifty Dollars ($150.00) for the down payment on the car, which he assumed was all the down payment. He had nothing to do with ordering the insurance or talking to the agent in any manner. He also testified that he made mechanical repairs and bought four (4) new tires for the 1958 Plymouth. He testified that he paid his brother-in-law and his sister the money to reimburse them in full for the payments on the car as well as the payments on the insurance. He also paid them for buying license plates for the car as well as oil and gas. He further stated that at the time of the accident with Mrs. Jaffa, he was living with a friend of his, Herman Herring. He then summarized the transaction as follows:

"Q All right. Let me ask you this; was it your understanding that you were actually going to pay for the car; isn't that true?

A Yes, sir.

Q And that your brother-in-law and your sister wouldn't have to pay any of it, that you were going to pay it all?

A I was going to reimburse them for getting the car for me.

Q Just answer my question; were you going to pay them back for the purchase price of the car, or not?

A Yes.

Q All right, now wasn't there some agreement that he was supposed to register the title of that automobile in your name?

A After it was paid for.

Q After it was paid for?

A By me.

Q Was that because you couldn't go down and borrow the money at the bank since you were a minor?

A Yes, sir."

Mr. Melvin George, the State Agent for Cimarron Insurance Co., Inc., testified that under the circumstances if a seventeen (17) year old minor who owned an automobile had applied for the insurance, the company would not have written the risk because it was prohibited from writing such a risk under the underwriting principles of the Cimarron Insurance Co., Inc.

Mr. John Price was then called as a witness by the appellees, and the certificate of title as well as the payment book were introduced. Under cross-examination Mr. Price testified that the reason the car was taken in his name was because his brother-in-law, Gary Michael Holt, was a minor and the bank would not loan Gary the money. He further testified that he had borrowed the money actually on behalf of his brother-in-law. He also testified that his wife received the full payments from Mr. Holt for the Wynnewood State Bank as well as the insurance policy, and in turn

made the payments in connection therewith. He further testified as follows:

"Q Mr. Price, we know that. Would you just answer my question? Actually, you were holding the title to it in your name until he paid it off, isn't that true?

A Well, that's true if that's what that means. That the title was in my name until it was paid off. That's true if that's what that means, yes sir.

Q All right. And he had paid the down payment on the automobile, isn't that right? Gary had?

A I believe that he gave my wife the amount of the down payment."

Mr. Holt testified:

"A Well, if I may do some explaining, the automobile that I was driving at that time, whatever needed to be done, was the one that was in the driveway last, whether it was Mr. Price's panel truck or mine; or not my car, but Mr. Price's car. Excuse me. If I may go on as an explanation, when I state it was my car, it was the fact that I drove this one rather than the other, such as on dates, or weekends, or when I had an appointment at the dentist I would ask John's permission."

Mr. Price testified regarding his conversation with Mr. Killough, "I told him that * * * well, I felt that I was the owner of the car since I had control of it, and it was in my name."

There is no evidence that Mr. Price represented to appellant or its agents that he was the "sole owner" of the Plymouth, nor does the policy in suit contain such phrase. The term used in the policy is "owned automobile" which phrase is defined in the policy as a vehicle of the type enumerated "owned by the named insured."

It is our opinion that there is evidence of probative value to sustain the finding of the jury failing to find that Mr. Price was not the true owner of the Plymouth when it collided with the car driven by Mrs. Jaffa.

Unquestionably, Mr. Price was vested with some of the indicia of ownership. He possessed the legal title. He was obligated to pay the bank the balance owing on the car. He controlled the use of the car pending reimbursement for the cost and transfer of title to Holt. He purchased the insurance policy from appellant.

In Pioneer Mut. Compensation Co. v. Diaz, Tex.Civ.App., 178 S.W.2d 121, El Paso, affirmed, 142 Tex. 184, 177 S.W.2d 202, it was held that a person having the legal right to have the title certificate to an automobile transferred to him was the "sole" owner of the car under an insurance policy calling for such ownership.

Here, it is undisputed that the right of Holt to have the title to the Plymouth transferred to him when the accident occurred had not matured. He had not fully paid for the car and Mr. Price was under no legal duty to convey title to him. The converse of the rule stated in Diaz should apply to this case. The title to the Plymouth had to be in someone. If it was not in Holt and he was not legally entitled to it, then it must be in Price.

Churchman v. Ingram, 56 So.2d 297, La. Court of Appeals, Second Circuit, is very closely in point and is particularly persuasive because it applied what it considered to be Texas law to a Texas contract. The facts there were that a father purchased an automobile for his twenty year old son for $1700.00. A down payment of $546.00 was made, mostly from money belonging to the son. The father, alone, made a note for the balance, it being contemplated that the son would pay the installments on the note as they came due. Certificate of title to the car was issued to the father. A policy of liability insurance covering the car was issued to the father. The son

took possession of the car and while driving it was involved in a collision with the ensuing litigation. The insurance policy issued to the father provided that the insured was the "sole owner" of the car, and it was alleged that the father so represented.

In holding that the father was the true owner of the car the Court after discussing Hicksbaugh Lumber Co. v. Fidelity and Casualty Company, Tex.Civ.App., 177 S.W.2d 802, Galveston, n. w. h., and Diaz, supra, stated:

"We think the holdings in the above cases, which accord with other numerous cited authorities, is thoroughly sound. As we appreciate the holding the effect is that the mere formality of the registration of title is not controlling and conclusive evidence as to ownership. A test of true ownership as fixed by the Texas Courts is set forth as being a legal right to compel the assignment and transfer of the certificate of title to a vehicle. Certainly under the facts of the instant case Jack W. Ingram, Jr. had no right to compel the transfer and assignment of legal title and until he became of age he could not acquire ownership of the vehicle. We think the facts are overwhelmingly opposed to the contentions advanced on behalf of defendant. Jack W. Ingram, Sr. was not only the holder of the certificate of title but he and he alone was obligated for the payment of the encumbrance against the vehicle amounting to some $1,300.00 more or less. How then can it be contended that Jack W. Ingram, Jr., despite his possession and use of the car, was the true owner, even giving due consideration to the fact that he had contributed several hundred dollars toward the purchase of the automobile. Clearly young Ingram was entitled to the use and possession of the automobile in question only by permission of his father and subject to his father's control. * * * Even as mere registration of title is not conclusive as to ownership, so possession and use is not conclusive. All the facts bearing upon the question of ownership must be considered and evaluated. We are firmly convinced that by any standard or under any requirement, Jack W. Ingram was the sole owner of the automobile in question."

We emphasize that the above case involved a "sole owner" clause, whereas, our case does not.

We also note that in Churchman the Court did not point to any evidence that the son was required to obtain the father's permission to use the car. There is evidence here that Mr. Price had control of the use of the car by Holt.

■ We hold that there is evidence of probative force to support the finding of the jury which is the subject of the points under discussion. We also hold, from a consideration of all the evidence, that such finding is not so against the overwhelming weight and preponderance of the evidence as to be clearly wrong or manifestly unjust.

Appellant's third point is that the trial court erred in refusing to instruct the jury in connection with a requested special issue identical with the one submitted, copied above, such instruction being:

"In connection with your answer to this Special Issue, you are instructed that the fact that the certificate of title to the 1958 Plymouth automobile was in the name of John W. Price merely creates an administrative presumption which vanishes when positive evidence to the contrary is introduced."

To sustain this point, appellant cites Diaz, supra, and Truck Insurance Exchange v. Schuenemann, 391 S.W.2d 130, San Antonio, writ ref., n. r. e.

We need not discuss the merits of this point for the reason that it is procedurally deficient.

Appellant did not object to the special issue given by the court nor to the instruction accompanying it. The failure to object to an issue submitted is not cured by requesting a special issue on the same subject even though the requested issue may be correct. City of Dallas v. Priolo, 150 Tex. 423, 242 S.W.2d 176; City of Denton v. Hunt, Tex.Civ.App., 235 S.W.2d 212, Fort Worth, writ ref., n. r. e.; Hardware Dealers Mutual Fire Ins. Co. v. King, 408 S.W.2d 790, Tex.Civ.App., Austin (11–9–66); Rule 274, Texas Rules of Civil Procedure, Hodges, Special Issue Submission in Texas, Sec. 69–73.

We express the opinion, however, that the requested instruction is erroneous. It is quite true that a legal presumption vanishes when positive evidence contrary to it is admitted, but it is equally true that the evidence which gave rise to the presumption in the first place does not vanish. It remains and is accorded its proper probative value. This subject is extensively discussed in the following authorities: Southland Life Insurance Co. v. Greenwade, 138 Tex. 450, 159 S.W.2d 854, Blanks v. Radford, 188 S.W.2d 879, Tex. Civ.App., Eastland, writ ref., w. o. m.; Roberson v. Allstate Insurance Co., 278 S.W.2d 179, Tex.Civ.App., Waco, writ ref., n. r. e.; Crow v. City of San Antonio, 294 S.W.2d 899, Tex.Civ.App., San Antonio, reversed on other grounds, 157 Tex. 250, 301 S.W.2d 628; McCormick and Ray, Texas Law of Evidence, 2nd ed. p. 72, fn. by Professor James B. McBaine.

Appellant's last point is that reversible error was committed by counsel for appellee in making the following argument to the jury:

"* * * In other words he wanted to issue the policy. He wanted to get the policy in force. He wanted to collect the premium on the policy. Ladies and gentlemen, they issued the policy. They got the money on it, and to this good day they haven't offered to refund it."

Appellant's objection to this argument was that there were neither pleadings nor evidence to support it. It also moved for a mistrial. The objection and motion were overruled.

It is true that there were no pleadings and no evidence in support of the statement that the premium paid had not been tendered to appellee.

It is our opinion that this argument, erroneous as it was, does not constitute reversible error under Rule 434, T.R.C.P.

Jurors are too intelligent not to realize that whether an offer to return a few dollars in premiums is made is of small practical importance when thousands of dollars are at stake.

Finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.