JOSEPH B. WISEMAN, Plaintiff, *v.* OGDEN PHIPPS and ROY C. GASSER, as Executors, etc., of OGDEN LIVINGSTON MILLS, Deceased, Defendants.[*]

Supreme Court, Dutchess County, November 19, 1940.

*McCabe & Rosen,* for the plaintiff.

*Anderson, Gasser, Ferris & Anderson,* for the defendants.

[*] Affd., 262 App. Div. 755; leave to appeal to Court of Appeals denied, Id. 863.

PATTERSON, J. We are asked to construe the ninth article of the will of the above-named decedent, which reads as follows: " *Ninth.* I give and bequeath to J. F. Clark, my gardener, Five thousand dollars, ($5,000), and to every domestic servant not herein named who is in my employ at the time of my decease and who at that time has been in my employ continuously for seven (7) years or more, Two thousand, five hundred dollars, ($2,500)."

The plaintiff has brought this action against the executors of the will of Ogden L. Mills to recover a legacy of $2,500 given to domestic servants on the ground that he was a domestic servant of the late Ogden L. Mills.

The plaintiff, concededly, comes in the class of those who had been employed by the decedent for seven years or more prior to his death. He was employed as a chauffeur and he continued in that employment until his employer's death. Prior to 1929 he had been employed by the testator's father, Ogden Mills, who in his lifetime gave the plaintiff a house at Staatsburg and by his will $10,000.

The decedent maintained two principal homes, one in New York city, which he apparently occupied generally between November and May of each year, during which time the plaintiff was provided with living quarters for himself and his family over the Mills garage at 109 West Fifty-second street, New York city. Occasionally during these periods the plaintiff would take his meals in the New York city house. The rest of the year the decedent occupied his estate on Long Island, where the plaintiff actually lived in the main house, in that part of it known as the " Men's Quarters," and he ate his meals there at the table provided for the help. Plaintiff's work in the main consisted of driving Mrs. Mills back and forth between the Woodbury and the New York city houses and, incidentally, elsewhere where she cared to go — in other words, the ordinary and usual work and duties of a chauffeur.

The sole question to be determined here is, did Ogden L. Mills intend to include the plaintiff among his domestic servants for whom he provided a legacy of $2,500? We shall probably never know just what the decedent's intention was and who he intended by the words " domestic servant." In such a case we must have recourse in the first place to the generally accepted meaning of the words employed. In construing a will, its words and expressions should be given their usual and ordinary meaning and the testator's intent determined therefrom in the light of the existing circumstances and conditions at the time the will was made. Recourse may be had to the context of the will as to whether the testator used the words differently from their usual and ordinarily accepted meaning. It is the contention of the defendants that the testator meant by " domestic

servant," one who lived in his family and performed duties inside the house.

Webster's International Dictionary defines the adjective " domestic " as " one in the position of a member of a household; or pertaining to one's house or home; or one's household or family; relating to home life, as, domestic concerns, life, duties, cares, servants." The noun " domestic " is defined to mean, " a member of a household; one who lives in the family of another as a hired household assistant; a house servant."

Funk & Wagnalls' latest work defines the word " domestic," used as a noun, as " a family servant, a person living with a family and performing household duties."

Judged by the strict and literal definition of a domestic, a chauffeur can hardly be classed as such any more than a gardener, a groom, a kennel master or the innumerable other employees customarily found in connection with the maintenance of a large family estate.

I think the wording of the article in question is significant as conveying the testator's intent. He gives and bequeaths to one " Clark, my gardener, $5,000.00 and to every domestic servant not herein named — $2,500.00." He very clearly distinguishes between his gardener and his domestic servants. He recognized classification among those employed on his estate or about his city home. He singled out Clark, his gardener, as a particular object of his bounty, and again, Keeting, his personal chauffeur, and set them aside as apart from his domestic servants. Certainly, in the usual acceptation of the term, a domestic servant connotes a servant who primarily is employed in and about the maintenance of the home itself. He may live under the roof, taking his meals there, or he may be domiciled elsewhere and repair to the home daily for work in and about the house where his meals are furnished. Such a person is a household servant, working within the house for the upkeep thereof and the care and comfort and convenience of the occupants thereof. A chauffeur performs none of these duties except as incidental to his employment. As the defendant contends, one who wishes to employ a chauffeur would not advertise for a " domestic servant " as he would if he wished to employ a cook or a maid. He would advertise for a chauffeur and the advertisement would be under the caption of " Chauffeurs."

A number of cases are cited to support the respective contentions as to the intent of the testator, but on the whole, they are of but little aid in deciding the instant case, because every will is different in some respect from every other will and in every case the surrounding circumstances are different. Perhaps the nearest approach to an analogous case is that of *Lafrinz* v. *Whitney* (233 N. Y. 107),

and that only by inference, where the court said, " The bequests were only to such persons as were customarily employed as part of the testator's household in his house. The plaintiff [a night watchman] certainly cannot be said to have been thus employed. It could just as well be urged that a gardener, or a coachman, or a person employed to render service of any kind about the place came within the provision."

In this case the Court of Appeals cited with approval the decision in *Ogle* v. *Morgan* (1 DeG., M. & G. 359; 42 Eng. Reprint, 590).

It has been held that there is no distinction between the word " domestic " and the word " household."

The case of *Murphy* v. *Lawrence* (218 Mass. 39; 105 N. E. 380), cited as authority for the contention of the plaintiff, is, I think, readily distinguishable because there the decedent, by the context of his will, clearly established what class he had in mind when employing the words " domestic servants."

In view of the fact that the chauffeur's employment was outside the household of the testator, it is my opinion that the intent of the testator was not to include him in the class of a domestic servant, and hence to exclude him as a beneficiary under the will.

It was stipulated that the case be tried without a jury and that the court direct a verdict with the same force and effect as though a jury were present. I, consequently, direct judgment in favor of the defendants and against the plaintiff dismissing the complaint.