**HARDWARE DEALERS MUTUAL FIRE INSURANCE COMPANY, Appellant,**

v.

**Agnes L. KING, Appellee.**

**No. 11447.**

Court of Civil Appeals of Texas.

Austin.

Nov. 9, 1966.

Rehearing Denied Dec. 7, 1966.

Fred R. Disheroom, Dallas, for appellant.

Gordon Wellborn & Rex Houston, Vaughan O. Stewart, Henderson, for appellee.

HUGHES, Justice.

This is a workmen's compensation case. The case was tried to a jury and upon its verdict judgment was rendered for the employe, Agnes L. King, and against the insurance carrier, Hardware Dealers Mutual Fire Insurance Company.

The jury was asked, "Do you find from a preponderance of the evidence that Agnes King was not hired or retained by Musser Motors, Inc. as a domestic serv-

ant?"[1] The term "domestic servant" was defined, in the charge, as "a person hired or employed primarily for the performance of household duties and chores, the maintenance of the home, and the care, comfort and convenience of members of the household." The answer of the jury to the above issue was favorable to appellee. Appellant did not object to the submission of this issue.

Appellant's first two points, jointly briefed, are that the jury's answer to this issue was without any evidence to support it, and because there was "insufficient evidence" to support such answer.

These points, in our opinion, raise only a question of law, not a question of fact. The question of law is whether there is any evidence of probative value, more than a scintilla, to sustain the answer of the jury. That the answer of the jury may be against the overwhelming weight and preponderance of evidence as to be clearly wrong or manifestly unjust, a question of fact, is not before us and we express no opinion with reference to it. Bolstad v. Egleson, Tex.Civ.App., 326 S.W.2d 506, Houston, writ ref., n. r. e.

In deciding the "no evidence" point it is our duty to view the evidence and inferences therefrom in a light most favorable to the verdict, disregarding all evidence to the contrary. See 38 Tex. Law Review 361, Chief Justice Calvert, "No Evidence" and "Insufficient Evidence."

We will now recite evidence which, in our opinion, has probative force sufficient to support the finding of the jury.

Musser Motor Company is a family corporation, owned by Rufus Musser and his son and a brother. It is engaged in the sale of automobiles and their repair. Mr. Musser is president of the corporation and his wife works for the Company as a bookkeeper for which she receives no pay.

[1] "Domestic servants" are not covered by the Workmen's Compensation Act. Article 8306, Sec. 2.

Agnes Louise King worked for the Musser Corporation for some ten or twelve years. She originally started to work for the Mussers in Graham, Texas, and then moved to Terrell when Mr. Musser moved his place of business there. Her salary ranged from $44.00 to $65.00 per week, based on pay of $1.00 per hour, during this twelve-year period. The services which she performed for her employer were mainly those of a general handy woman and included such things as cleaning up at the office, waxing floors, cleaning windows, working at company parties and doing about anything which the Mussers considered necessary in the furtherance of the company's business. In addition to these services, Mrs. King was often sent to the homes of the various officers to clean up, cook and baby-sit. Mr. Musser testified that he felt that since the corporation officers were helping pay Mrs. King's salary, she should work in their homes. No matter where Mrs. King was assigned to work, she was continuously carried on the company's payroll and compensation premiums were paid on her just as they were paid on other company employees. The salary received by appellee was greatly in excess of the salaries received by domestic servants in the Terrell area.

On the day of the injury, appellee first went by the Musser office and then went to Rufus Musser's home around 7:30 or 8:00 that morning. She spent most of the morning cooking and the injury occurred about 1:30 p. m. that afternoon. At the time of her injury, appellee was following the specific instructions of Mrs. Musser to move a cast iron lawn chair out of the Musser's driveway and take it around the house to the front porch, so that some of the boys from the company could come out and pick it up.

Appellee testified that the chair which she was instructed to move weighed about 95 to 100 pounds; that she, contrary to instructions, moved the chair by herself, and that as she picked the chair up she felt a "catch" in her back.

Mrs. Musser testified:

"Agnes King worked for Mr. Musser and me here in Terrell and when we lived in Graham, and performed about the same kind of duties at both places. She was carried on the company payroll at all times and made $1.00 per hour. She was an able-bodied employee before she got hurt and never complained of anything being wrong with her. She injured herself moving a lawn chair. I had intended to have her husband, who was also a company employee, come out and help her move the chair. She did all the jobs that either I or my husband assigned to her from time to time. She worked at the place of business or wherever any of the stockholders wanted her to work. She worked at new-car showings and at company parties. She performed janitor work at the place of business whenever she was told to. At the time she was hurt, she was doing work I wanted her to do, except that I wanted someone to help her."

Mr. Musser testified:

"I have known Agnes King and her husband about 10 or 12 years. They worked for me in the past. We employed her husband about 10 or 12 years ago and then employed her right about the same time. Agnes occupied the same status the whole time she worked for us. We carried her on the payroll of Musser Motor Company from the time we first employed her until she last worked for us. My wife and I assigned various tasks to Agnes, just as we do any of our employees. At the time she got hurt, she was making $1.00 per hour and was still an employee of Musser Motor Company. She was hired to take care of our cabin we had in Graham, to work at shop parties, customer relations parties and to take care of the house. I cannot estimate what percentage of her work was performed at the shop and what percentage was performed elsewhere. I considered her available to work for

Musser Motor Company at any time or place we needed her. She was paid about three times as much as domestic servants in the Terrell area. She was a general handy woman and performed every duty we assigned her. Agnes was sent to take care of the homes and children of the various corporate officers whenever they were busy with some corporate function. She was very responsible and was often sent to relieve the various corporate officers of their responsibilities. She was a valuable asset of Musser Motor Company. We all leaned on Agnes pretty heavy because she was a valuable part of the corporate picture. We paid workmen's compensation premiums on her for years and years.

\* \* \* \* \* \*

Q Mr. Musser, your wife, Mrs. Inez Musser, works at the Musser Motor Company?

A Yes, sir.

Q What salary is she paid?

A None.

Q Was there any connection in her working at the motor company and your hiring Agnes King on the company payroll?

A Well, yes. We felt that the corporation would be better off by hiring someone to do the work out at the house and take care of a lot of the duties that a wife had to do, rather than to hire someone and her stay at home, and we felt like she would be more valuable to the company.

Q And when Agnes was hired by the corporation, it was—you were going to answer a while ago, it was with the understanding that her duties were to do what?

\* \* \* \* \* \*

Q What were her duties to be for the corporation?

A Well, her duties for the corporation was to—well, one of them was—I have a son and brother that is an owner in the corporation, is to relieve some of their duties out at the house—well, like baby-sitting whenever we have a corporation meeting, and things like that, she was to, like we do a tremendous amount of entertaining, and she was to take care of our parties and things like that. That was understood. We paid her just like we did our regular employees that we had on our payroll, men or anybody else that we had on the job. We paid her hourly, and when she went into overtime, she got overtime just like anybody else.

Q The corporation parties and banquets, did you have many of those?

A Oh, yes, we have quite a few.

Q Where do you have those?

A Here at home. We have been holding them in our home."

Maryland Casualty Co. v. Levine, 67 F. 2d 816, 5th Circuit, opinion by Judge Hutcheson, is analogous. There a family corporation, owned by W. D. Haden and his two sons, employed a utility or handy man named Levine. The company owned a Chevrolet and a Packard which were kept at E. D. Haden's home. Mrs. E. D. Haden was permitted to use this car as her personal car. Part of the duties of Levine was to wash and care for these cars. His other duties were very general in nature, he doing whatever he was told to do. He also, from time to time, performed purely domestic work for Mrs. E. D. Haden. While enroute to the Haden home to wash the Packard and do other odd jobs for Mrs. Haden, Levine was accidentally killed. The Court held he was covered by our Workmen's Compensation Act at the time of his death, the Court saying:

"The duty of a general utility man like Levine is performed when, under the in-

structions of his superior officer, he looks after company property. It is neither his duty nor his right to inquire into the use of that property which his superior officer intends to make. It is enough if what he does in regard to it is, as this was here under the evidence, within the scope of his recognized and established duties to the company."

■ In Texas Employers Insurance Association v. Weber, Tex.Civ.App., 386 S.W.2d 835, writ ref., n. r. e., we held that "the nature of the business in which the employee is hired to work and the duties he regularly performs are the controlling tests and not the specific activity he is engaged in at the time of his injury."

■ The employer's business here was the automobile business. Appellee was employed by Musser Motors, Inc. to do anything necessary in the furtherance of the business or trade of Musser Motors.

Some of the work done by appellee was of a domestic nature. It was performed, however, in furtherance of the business of Musser Motors in that it relieved Mrs. Musser of these duties in order that she could devote her time, or part of it, to working at the place of business without pay.

In addition, some of this work of a domestic nature was essential to the entertainment which Mr. Musser provided in his home for business purposes. In this enlightened age, it is not to be doubted that public relations are a business concern, and that they are fostered in many ways, including entertainment in the home.

We have, as indicated, concluded that, as a matter of law, the evidence does not show appellee to have been a "domestic servant" at the time of her injury although some, if not a major part of her work was of a domestic nature.

Webster's International Dictionary, 2nd Ed., unabridged, defines a "domestic" as "one who lives in the family of another as a hired household assistant; a house servant."

Appellant cites Wiseman v. Phipps, 176 Misc. 964, 28 N.Y.S.2d 971, and In Re Johnson's Estate, 156 Misc. 689, 282 N.Y.S. 806, as holding that a domestic servant is a person working within the house for the care, comfort, convenience and enjoyment of the home and its occupants.

We have no doubt that these authorities are sound. They are not controlling here because while some of the work performed by appellee was of a domestic nature it was not exclusively for the convenience and enjoyment of the home and its occupants; it also served to further the business of Musser Motors.

■■ Appellant's third point is that the trial court erred in not submitting, as it requested, the following special issue and accompanying instruction:

"DO YOU FIND FROM A PREPONDERANCE OF THE EVIDENCE, THAT AT THE TIME AND ON THE OCCASION IN QUESTION, THE PLAINTIFF, AGNES L. KING, WAS NOT A DOMESTIC SERVANT?

Answer: 'She was not a domestic servant,' or 'She was a domestic servant.'

We, the Jury Answer:————————

Domestic Servant as used in this charge means a person who primarily is employed in and about the maintenance of a home itself. Such a person is a household servant working within the house for the upkeep thereof, and the care, comfort and convenience of the occupants thereof."

The principal difference between the special issue submitted by the court regarding appellee's status as an employe and the requested issue is that the latter issue deletes the phrase "hired or retained" and limits the inquiry to the status of appellee to the "time and on the occasion in question."

It seems to us that our opinion in Weber, supra, is decisive of this point. See also Holmes v. Travelers Insurance Company, Tex.Civ.App., 148 S.W.2d 270, Galveston, writ ref., where the Court stated that in determining whether a person was a farm or ranch laborer under Sec. 2 of Art. 8306, "the controlling consideration is the nature of the work the injured employee is hired to do on the employer's premises."

It is to be noted here the charge contained the customary issues of whether appellee was an employe of Musser Motors when she was injured and whether such injury was sustained in the course of such employment.

We are of the opinion that the evidence is undisputed that appellee was performing an act for Musser Motors when she was injured and that she was not at such time acting in the capacity of a domestic servant. Thus the case, in our opinion, is brought within the scope of the ruling in Levine, discussed above.

If this view is correct, then the charge given was more favorable to appellant than the requested charge.

 We are also of the opinion that appellant by not objecting to the special issue submitted by the court as to the status of appellee has lost his right to complain of its form, and that this failure to object is not cured by the request of a special issue on the same subject even though it be correct. City of Denton v. Hunt, Tex.Civ.App., 235 S.W.2d 212, Fort Worth, writ ref., n. r. e.

We overrule point three.

 Point four is that the trial court erred in overruling portions of its motion in limine which requested the court to instruct appellee's counsel not to mention before the jury the fact that insurance premiums had or had not been paid by Musser Motors on behalf of appellee.

It was not reversible error to overrule a motion in limine. Appellant did not object to the admission of this testimony when of-

fered. This was its remedy. Hartford Accident and Indemnity Co. v. McCardell, 369 S.W.2d 331, Tex.Sup.

The judgment of the trial court is affirmed.

Affirmed.