Emilia Colocho, Plaintiff and Appellant, *v.* Anita Hebard, Defendant and Appellee.

No. R-65-256.     Decided February 28, 1968.

*Francisco Aponte Pérez* and *José A. Aponte Pérez* for appellant. *Beverley, Rodríguez & Reichard* and *William Estrella* for appellee.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Appellant Emilia Colocho filed a complaint against her employer, appellee Anita Hebard, alleging that appellant had rendered services of personal assistance by reason of appellee's ill health, she helped her keep accounts of the household expenditures and rendered other analogous services and that appellant worked sixteen hours daily, seven days a week.

The trial court concluded that appellant rendered housekeeping services for appellee, and that she was not entitled to the claim and, therefore, it dismissed the complaint.

1. The first two and the fourth assignments are related to the weighing of the evidence and, more specifically, are intended to challenge the conclusion that appellant was employed in the domestic service.

■ To determine whether a person is employed in the domestic service it is important to examine the nature of the work performed by the employee, whether the same is rendered in the employer's home or outside, but in connection therewith, and whether its main task is necessary or desirable to contribute to the necessities and welfare of the family, or to the management or enjoyment of the house or dwelling. *López Figueroa v. Valdés*, 94 P.R.R. 227 (1967). The trial court determined that appellant was hired to work in appellee's house for a weekly salary of $80; that her duties included, among other things, "the light cleaning of the house, . . . cooking, machine washing of clothes and other household chores; that she accompanied her employer to the supermarket to buy groceries and likewise she accompanied her to social activities which she had to attend, thus keeping her company." Said court also concluded that, "Petitioner, in spite of her functions and domestic services in the home, and precisely due to appellee and her family's confidence in her, she always enjoyed an exceptional treatment, being a companion to respondent, and accompanying her to social functions such as theatrical activities, lunches in restaurants, etc."

The evidence adduced in this case fully supports the preceding findings of the court. Appellant herself testified that:

She was a nurse in the Republic of El Salvador where she was hired to keep company and take care of appellee in New York; that subsequently they moved to Puerto Rico; that her work consisted in preparing defendant-appellee's

meals, machine wash her clothes, and keep her company when watching television, going shopping, and conversing. She also had the responsibility of the complete household including the payment of accounts. She also helped her in her personal bath and did the light cleaning of the house.

.. No evidence was offered in the sense that appellant served as nurse to appellee. On the contrary, it appears from the record that when petitioner went to work for appellee she substituted a person who was not a nurse and that when she abandoned said employment she was not substituted by a nurse either. The fact that she was a nurse was not an important factor to hire her for that work. On the other hand, it does not appear from the evidence that appellee needed the services of a nurse.

This work was rather offered to Mrs. Colocho because they had known her for many years, she had previously worked for the Hebard family, and they had confidence in her.

█ Pursuant to § 1474 of the Civil Code (31 L.P.R.A. § 4112) it should be understood that a domestic servant is "A person employed for domestic service, whether for the personal service of the head of the family or for the general service of the household."

█ According to Manresa, [a] Castán, [b] and Santa María [c] [1] the principal characteristic which distinguishes the domestic worker is the direct service of the latter to his master and his family and the domestic relationship, the domestic worker generally living together with the family. The work to which domestic service refers must be manual work, and said concept excludes the services rendered by secretaries, teachers, governesses, etc.

---

[1] [a] 10 *Comentarios al Código Civil* 902–903 (5th ed.).
[b] 4 *Derecho Civil Español, Común y Foral* 475 (8th ed.).
[c] 2 *Comentarios al Código Civil* 635.

■ The Spanish Labor Contract Law of 1944 defines domestic service as "that which is rendered for day wages, pay, salary, or remuneration of another kind or without it, and which is hired, not by an employer, but by the master of a private home or dwelling for the exclusive service of the hiring party, of his family, or of his dependents whether they lodge in the master's domicile or outside thereof." The term domestic servant was defined in *Anderson* v. *Veland*, 267 N.W. 517 (Minn. 1936), as that whose activities and efforts are directed toward the care and maintenance of a home, and true test is the nature of the work done. See also, *In Re De Forest's Estate*, 15 N.Y.S.2d 466 (1939); *Wiseman* v. *Phipps*, 28 N.Y.S.2d 971 (1940).

In the light of the foregoing we agree with the trial court in that appellant worked in appellee's domestic service.

■ Act No. 379 of May 15, 1948, which establishes the working day and the payment of double time for hours worked in excess of the legal working day, excludes from its provision, in § 16 (29 L.P.R.A. § 285), "persons employed in domestic service."

2. The fourth assignment sets forth that the trial court erred in deciding that a person employed as a servant is entitled, pursuant to § 16 of Act No. 379, *supra*, to one day of rest for every six days of work, but she lacks a cause of action to claim said day of rest, if the compensation received for meals and shelter exceeds the compensation she is entitled to claim for the seventh day. The trial court concluded, correctly in our opinion, that petitioner worked seven days a week in her functions in defendant's domestic service.

Section 16 of Act No. 379, *supra*, is applicable to the facts of this case. Said section, in its pertinent part, reads:

"The provisions of sections 271–288 of this title shall not be applied to persons employed in domestic service; *Provided, however, That they shall be entitled to one day of rest for every six days of work.*" (Italics ours.)

This is a legislation whose main objective is the effective protection of the health, safety, and life of the laborers, by eliminating the exploitation of the worker by means of *excessive* working days, with a saving provision which expressly deprives domestic employees of that protection. That inequality in terms of protection and benefits, between the employee fully protected by Act No. 379, *supra*, and the domestic employee, is supposed to be equitably set off by those intangible facilities or benefits which come to them, and sometimes to their dependents, *together with their wages*, from living in a good family home, such as, among others, comfortable and secure shelter, good meals, adequate clothing, medical care and medicines, Christian treatment, intellectual enhancement, recreation, use of property, and family relations. *López Figueroa* v. *Valdés, supra.*

██ In the present case and pursuant to said legislation appellant is entitled to a day of rest for every six days of work. Having failed to enjoy said day of rest, her employer is bound to indemnify her at a *regular* rate. Act No. 379, *supra*, which fixes a double time wage for hours worked in excess of the legal working day, in its § 16, *supra*, excludes from its provisions persons employed in the domestic service, provided that they shall be granted one day of rest for every six days of work.

On the other hand, Act No. 289 of 1946 (29 L.P.R.A. § 295), known as the Seventh Day Act, refers to employees of commercial or industrial establishments, enterprises or lucrative businesses not subject to the provisions relative to the closing to the public. As we can see it is not applicable to the case at bar.

██ The trial court concluded that appellant's wages included the seven days a week. It is not right. The weekly wages only include the six working days, since the seventh day is the day of rest. The seventh day belongs to the em-

ployee, and it cannot be waived, since it is a question of public order. ..:

█ It is not proper either to compensate the wages for said working day with the meals and lodging furnished by the employer. Precisely, that was one of the factors that the lawmaker took into consideration to exclude the domestic employee from the provisions of Act No. 379, *supra*. However, even considering said factors, he reserved for that employee the right to a day of rest. This is indicative that the meals and lodging that the employer furnishes to his domestic employee is part of the labor contract and that it cannot be used to compensate the work rendered by the latter during his day of rest.

To determine the compensation to which appellant is entitled the weekly wage is divided into six working days. Such computation shows that appellant's daily wage was $13.33. During the period comprised between January 5, 1963, and July 31, 1964, to which the claim refers, there are 81 seventh days, which at the rate of $13.33 each amount to $1,079.73.

3. The contention as to vacations lacks merit. It appears from the record that the petitioner enjoyed the vacations she now requests.

█ In view of the foregoing the judgment rendered in this case will be reversed and another rendered in favor of appellant for the sum of $1,079.73,[2] which amounts to the wages which she failed to receive during the seventh days

---

[2] Pursuant to the provision of § 16 of Act No. 379; *supra*, appellant is not entitled to recover a sum equal to that claimed, as liquidation for damages provided in § 13 of said Act (29 L.P.R.A. §§ 285 and 282). She is not entitled to it either according to § 30 of the Minimum Wage Act (Act No. 96 of 1956—29 L.P.R.A. §§ 246b and 246h), since the compensation provided in this Act is limited to industrial workers and employees and the definition for industry expressly excludes the domestic service employees. She is not entitled either to the additional sum provided by § 9 of Act No. 2 of 1961 (32 L.P.R.A. § 3126), since malice aforethought was not shown.

comprised in the period between January 5, 1963, and July 31, 1964, to which the claim refers.

